OF THE

## STATE OF MISSOURI

AT THE

### APRIL TERM, 1904.

*(Continued from Volume 181.)*

### SMITH v. CITY OF SEDALIA, Appellant.

**Division One, May 25, 1904.**

1. **PRACTICE: Promise to Connect Evidence: New Trial.** Where counsel promise to connect with a condition of things embraced within the petition evidence which is incompetent because referring to a period not so embraced in the petition, and that connecting evidence is not afterwards produced, the court should, if the verdict is in favor of his side, and the evidence introduced affects the foundation of the cause of action, grant a new trial to the other side.

2. ———: ———: ———: **Mitigation of Damages: Sewage.** Where plaintiff sues for damages to his premises caused by a discharge thereon of the sewage of a city, and the city undertakes to show that the premises were injured by the discharge thereon of the refuse of certain slaughter houses which had existed prior to the time the damage laid in the complaint was done, and, that evidence being objected to, defendant offers to connect those facts with the damage complained of in the petition, but never does, such evidence can not be said to be aimed only at a mitigation of damages, but affects plaintiff's right to any damages, and, hence, the verdict being for defendant, new trial should be awarded.

(1)

3. **DAMAGES: Recovery: Nominal.**  The plaintiff is not required to prove special damages to entitle him to recover at least nominal damages. A proof that a nuisance existed is sufficient to entitle him to nominal damages, without any proof of the special damages charged.

4. ———: ———: ———: **Sewage: Market Value of Property.** For the discharge by a city of sewage upon private premises to his injury, the owner is entitled to compensation for the depreciation caused thereby in the market value of the land, the destruction of the comfortable use and occupation thereof, and for actual loss of rents. His damages can not be limited to loss of rents only.

5. ———: ———: ———: ———: **Instruction: Punctuation.** An instruction set out in this case, because of its punctuation, and when taken in connection with the others given, restricts the jury in assessing plaintiff's damages for sewage discharged upon his premises by a city, to loss in the rental value thereof, and does not permit them to allow anything for any damage to the market value of the premises, or anything as nominal damages unless there was a loss in the rental value, and hence is error.

Appeal from Johnson Circuit Court.—*Hon. W. L. Jarrott*, Judge.

AFFIRMED.

*A. L. Shortridge* and *C. C. Kelly* for appellant.

(1) Defendant had the right to construct the sewer in question so that it would discharge itself into the stream naturally draining the territory covered by the sewer districts. Mining Co. v. Joplin. 124 Mo. 136. (2) The only restriction upon this right is that defendant must not discharge its sewer into such stream, if plaintiff's lands will be injured thereby, without compensating him for damages he may suffer. Mining Co. v. Joplin, 124 Mo. 135; Van De Vere v. Kansas City, 107 Mo. 90. (3) Two juries in two different counties having found that plaintiff's lands have not been damaged, the court will not grant plaintiff repeated new trials except for errors manifestly to the great prejudice

of plaintiff. Ittner v. Hughes, 133 Mo. 689. (4) Defendant was entitled to show in mitigation of damages that slaughter houses had been operated extensively for many years upon the banks of the stream flowing over plaintiff's land. (5) Instructions 9, 10 and 11 given at the request of plaintiff presented the real issues to the jury, to-wit, that plaintiff was entitled to recover compensation for all injury done to the rental value and comfortable use and occupation of his premises by reason of the acts of defendant complained of in plaintiff's petition. It was therefore harmless error, if error at all, to refuse plaintiff's thirteenth instruction telling the jury that they could only consider the testimony relating to slaughter houses in diminution of damages.

*Sangree & Lamm* and *Montgomery & Montgomery* for respondent.

(1) The court properly granted a new trial on account of the admission of improper evidence offered by the defendant. This evidence consisted of testimony of witnesses as to a number of slaughter houses which were shown to have been in existence upon the draw leading into Cedar creek and in Cedar creek, and the offal and output of which were emptied into the draw and creek, and from thence carried upon and over plaintiff's land, greatly polluting the water, creating foul smells, etc. These slaughter houses were shown to have been erected from 1869 to some time in the seventies. The admission of this evidence was objected to by plaintiff, but admitted by the court upon the promise and assurance of defendant's counsel that it would be shown that these very same slaughter houses were continued in operation during the period covered by the suit, that is, after April 20, 1890. These promises were never kept, but the defendant's own evidence showed they were all, except one, closed prior to 1890, and some of them many years before. The one which was continued in opera-

tion during a part of 1890 was under an injunction prohibiting any pollution of the stream or air. (2) (a) The statute does not prohibit the granting of more than one new trial, when they are granted on account of errors committed by the court in giving and refusing instructions or in admitting or rejecting evidence. Langston v. Railroad, 147 Mo. 464. McShane v. Sanderson, 108 Mo. 319. (b) The action of a trial court in granting a new trial is a matter peculiarly resting with him, and his discretion in this particular will not be interfered with unless it plainly appears that injustice has been done or that it has been unsoundly or arbitrarily exercised. Kuenzel v. Stevens, 155 Mo. 285. (3) (a) Plaintiff has a right to insist that the waters of Cedar creek passing over and through his land shall come to him in its natural state, subject only to the natural wash and drainage from the territory which naturally drains into it. And the act of the city in gathering its sewage into a sewer system and discharging the same into the bed of Cedar creek near plaintiff's land, from whence it was carried down in the channel of Cedar creek upon plaintiff's land, was a violation of plaintiff's right, wrongful and without justification. Paddock v. Somes, 102 Mo. 237; Mining Co. v. Joplin, 124 Mo. 135; Rychlicki v. St. Louis, 98 Mo. 500; Edmondson v. Moberly, 98 Mo. 525; Water Co. v. Strawboard Co., 53 Fed. 974; s. c., 57 Fed. 1001; Good v. City of Altoona, 29 Atl. 741; Village of Dwight v. Hayes, 37 S. E. 218; Dierks v. Commissioners, 142 Ill. 197; Barrett v. Mt. Greenwood, 42 N. E. 892; Cooley on Torts (1 Ed.), p. 587; Chapman v. City of Rochester, 110 N. Y. 277. (b) It is not necessary that plaintiff should prove any actual damages. The law adjudges a tort has been committed, and upon reason and principle by every invasion of a right some damage is presumed, and the law therefore makes some award although no actual damages are proved. Ency. of Law (2 Ed.), Title, Nuisance, p. 712; Cooley on Torts, p. 62; Webb's Pollock on Torts,

p. 518 n.; Smiths v. McConathy, 11 Mo. 523; Mize v. Glenn, 38 Mo. App. 104; Jones v. Hannovan, 55 Mo. 466; Paddock v. Somes, 102 Mo. 237; Berlin v. Thompson, 61 Mo. App. 242; Wood on Nuisances (1 Ed.), secs. 691 and 700, (2 Ed.), sec. 871; Railroad v. Baptist Church, 137 U. S. 568. (c) What constitutes a nuisance is a question of law for the determination of the court. In the case at bar there is no dispute as to the construction of the sewer by the city and the gathering in one body and emptying its foul and deleterious sewage into the bed of Cedar creek, and the court should have so instructed the jury and given the first instructions prayed by plaintiff. Smiths v. McConathy, 11 Mo. 523; Thomas v. Cannery Co., 68 Mo. App. 358; Gibson v. Donk, 7 Mo. App. 37; Jones v. Hannovan, 55 Mo. 467; Bungenstock v. Nich. Drain. Dist., 163 Mo. 222; Kirchgraber v. Lloyd, 59 Mo. App. 62; Paddock v. Somes, 102 Mo. 236. (d) In an action for damage for a private nuisance it is not necessary to allege or prove any special damages. Damages are not usually the object of such suits. (e) The principal object usually is to establish the fact of a nuisance and make this the foundation for proceedings to abate it. Smiths v. McConathy, 11 Mo. 519. (f) The award of damages is a necessity to the preservation of the plaintiff's rights, for a continued repetition of the wrong may be acquiescence and presumption become a right, and bar the owner at a time when the nuisance becomes unbearable, of a right to abate it. Cooley on Torts, p. 62; Webb v. Portland Mfg. Co., 3 Sum. 192. (4) The court erred in refusing to give instruction 13 prayed by plaintiff.

VALLIANT, J.—Plaintiff sues the defendant city for damages for having constructed and for maintaining a system of sewers through which the sewage of the city is emptied into a creek that flows through the plaintiff's farm, polluting the water of the creek and infecting the air, thereby rendering the plaintiff's farm less

valuable and less enjoyable as a place of residence or occupation.

The answer of the defendant pleads a prescriptive right to use the creek as an outlet for its sewers, and denies that the sewage pollutes the water or in anywise injures the plaintiff's property.

This is the second appeal in the case. For a fuller statement of it we refer to the opinion of the court on the former appeal, a reading of which will render further statement now unnecessary. [Smith v. Sedalia, 152 Mo. 283.]

On the former appeal we affirmed the ruling of the trial court sustaining the plaintiff's motion for a new trial and remanded the cause to be retried. On its return to the circuit court of Pettis county a change of venue was ordered on the motion of the plaintiff, and the cause was sent to the circuit court of Johnson county, where it was again tried, with the same result as in the former trial, that is, a verdict for the defendant, and a motion for a new trial by the plaintiff, which the court sustained. From that ruling the defendant has again appealed.

The evidence for the plaintiff bearing on the points now to be considered tended to show as follows:

The plaintiff purchased the farm in question, containing about four hundred acres in 1889. Cedar creek meanders through it, and was, until polluted by the sewage complained of, a valuable feature of it. The farm lies just north of the city, a small part being within the city limits. In 1887 the city by ordinance provided for the construction of a system of public sewers, and in that year the main public sewer was constructed, extending northward towards the land now owned by plaintiff to a point 3,600 feet from Cedar creek, and about 4,000 or 5,000 feet from the plaintiff's land. The sewage discharged at that point passed through open natural drains, exposed to the air, on to Cedar creek, but by the time it reached the creek its offensive character

was diminished, so that it was not particularly observable on the plaintiff's premises.    But at the point where the sewage was then discharged it became so offensive that the city in 1891, on complaint of the people in that vicinity, extended the sewer on to Cedar creek.    Then the people in the vicinity of the point to which it was extended and at which the sewer emptied into the creek made complaint and the city again extended it on down the creek about 1,500 feet to a point within seven hundred feet of the plaintiff's land.    The creek carrying this sewage meanders through the plaintiff's land 5,550 feet.    It is the sewage of a city of 20,000 people.    The water in the creek was, after the extension in 1891, rendered unwholesome and the air became obnoxious.

The testimony on the part of the defendant tended to show that the water was not polluted by the sewage, but on the contrary it was improved, for that, whereas before the sewage was turned into the creek, it was not a constantly running stream but, except in seasons of freshets, the water stood in pools which were the receptacles, through natural surface drainage, of the filth of a large area of the city, and which became stagnant and offensive, and when the rains came the offensive accumulations in these pools were washed down on plaintiff's land, but since the sewers have been constructed and caused to empty into the creek there is a constant current in the creek, and the water thereof is fresh and wholesome.

The defendant introduced evidence over the plaintiff's objection tending to show that slaughter houses and soap factories had been built and operated over and along this creek, casting their filth into it, to such a degree that it became intolerable.

The erection and operation of these offensive establishments began in 1869 and extended to 1882 or 1885. The plaintiff objected to this evidence on the ground that it told of conditions that had existed but had ceased to exist years before the plaintiff bought the land and

years before the sewers complained of were constructed. The court was about to sustáin the objection when counsel for the defendant interposed and said that they would show that that condition existed down to the time covered in this suit. The following colloquy between the court and counsel for defendant occurred:

"You claim that you have testimony that these same slaughter houses polluted this stream during this time? Yes, sir. The slaughter houses mentioned in this cross-examination? Yes, sir, every one of them." Then the court said: "The objection to this will be overruled for the reason that counsel for defendant states to the court that they will show that these same slaughter houses and other institutions continued to pollute this stream, known as Cedar creek, down to the time and during the time for which plaintiff claims damages in this case." There was no testimony afterwards introduced which tended to show that any of these establishments existed after 1885; they were all closed by injunctions, except one which was operated during a part of the year 1890 under terms and conditions prescribed by the court, to prevent polluting the water or air.

There was evidence also of another slaughter house, not one of those before mentioned, that was in operation after April 20, 1890, but it was a considerable distance from Cedar creek, and did not drain into it.

The cause was submitted to the jury under instructions that are not criticised by appellant. The court refused the following instruction asked by the plaintiff.

"13. The court instructs the jury that you have no right to consider the pollution to the waters of Cedar creek caused by the slaughter houses as shown by the evidence, except during the time the same may be shown to have polluted said waters and decreased the damages which plaintiff would be entitled to recover, if any, from the pollution of said waters caused by the sewage from the defendant's sewer system."

After verdict for defendant the court sustained the

plaintiff's motion for new trial on the grounds that it had erred in admitting evidence on the part of defendant and in refusing instruction 13 asked by plaintiff. From that ruling this appeal is prosecuted.

The plaintiff's cause of action is founded on the alleged injurious effect of the sewage on the water of the creek on his premises after the extension of the sewer in 1891. His testimony tended to show that when he purchased the land in 1889, the obnoxious effect of the sewage in the water of the creek was not perceptible or if at all to a very slight degree, because then it flowed in open natural drains for a distance of 4,000 or 5,000 feet before entering his land, but that after the main sewer was extended so far north that it emptied into the creek within seven hundred feet of his land, the nuisance began to develop. That was the injury complained of and the evidence ought to have been limited to that period. The evidence tending to show that slaughter houses, soap factories, etc., had been in operation along the creek many years before was read from the transcript of the evidence at the former trial, so that the court had before it both the examination and cross-examination of the witnesses and was thus informed as to the period covered by it, and seeing that it related to a condition that existed years before that complained of, signified an intention to sustain the objection that plaintiff made to it, and would have done so but for the assurance of counsel that it would be followed with evidence showing that the same causes and effect had continued down to and through the period covered by the plaintiff's complaint. Upon that assurance the objection to the evidence was overruled. But the promised evidence was not adduced. The learned trial judge was justified in admitting the evidence on the promise given and he was also justified in sustaining the motion for a new trial on the ground that the defendant was unable to fulfill its promise. It is in the discretion of the trial court to allow counsel some choice as to the order in

which they will introduce their evidence, but when counsel have been permitted to introduce evidence out of its usual order on their assurance that it will be connected and its relevancy shown later, if the promised evidence is not brought forward and if the irrelevant evidence is of a character likely to influence the jury and if the verdict is on that side, the trial court should set it aside and grant a new trial. The fact that the promise may have been made in good faith does not alter the effect of the illegal evidence. In this instance, there had been a change of venue and a change of counsel since the former trial and doubtless the counsel who gave the promise expected they would be able to fulfill it, but in that respect they were disappointed.

It is argued that the testimony was aimed only at a mitigation of damages, and that since the verdict was for the defendant, the jury did not get so far as an assessment of damages, and therefore the testimony was harmless. But the tendency of the evidence was beyond the mere mitigation of damages; it was to show that the condition of which the plaintiff complained was not the result of the discharge of the sewers into the creek, but of other causes for which the defendant was not responsible. Thus it was aimed at the foundation of the plaintiff's cause of action.

Instruction 13, which the court refused, was a direction to the jury to disregard the evidence relating to the slaughter houses.

The trial court correctly ruled on the motion for a new trial that that instruction should have been given. Of course, if the objection to the evidence had been sustained, there would have been no occasion for the instruction.

The court in its instruction 11 for plaintiff correctly directed the jury to find for the plaintiff if they found from the evidence that the defendant had collected the surface water, drainage and sewage of the city into a general sewer system and discharged the same into

Cedar creek within a few hundred feet of plaintiff's farm, causing it to flow through the farm, thereby reducing its rental value and rendering it less comfortable for use and occupation, and directing the jury to award plaintiff damages for the reduction in rental value and the injury caused by rendering the farm less comfortable for use and occupation.

But for the defendant the court gave this instruction:

"8. The court instructs the jury that in no event and under no circumstances can plaintiff recover in this action against defendant for any damages to the market value of his land; nor for any damage to the rental value thereof caused or produced by the flow of natural drainage upon said land."

Possibly the intention was to say that no compensation should be awarded the plaintiff for damage to the market value of his land caused by the flow of natural drainage, but the language used in the instruction, and its punctuation, render it liable to the construction that the plaintiff was not entitled to recover for the depreciation in the market value of his land caused by the discharge of the city's sewage into the creek. And that that was the meaning intended is further shown by instruction 10 which is as follows:

"The court instructs the jury that the burden of proof in this case rests upon the plaintiff and that it is not sufficient to entitle him to recover for him to show that the city of Sedalia gathered surface water and sewage into its sewers and caused the same to flow into Cedar creek and down through the lands in question, but he must go further and prove to the jury by the greater weight of all the evidence that the rental value of said lands was depreciated between April 20, 1890, and April 20, 1895, by reason thereof, and that plaintiff has been damaged thereby, and unless he has so proven the jury must find for the defendant."

In that the plaintiff's recovery is not only limited

to the amount of the diminution of his rent, but the jury are forbidden to find for him, even in nominal damages, unless he has proven special damages in the way of loss of rents.

That is not the law.    If the defendant city has collected its sewage and discharged it in a volume into the creek to the injury of the plaintiff he is entitled to compensation for the depreciation caused thereby in the market value of his land if that is shown, for the destruction of its comfortable use and occupation if that is shown, and for actual loss of rents if that is shown. But he is not required to prove special damages to entitle him to recover at least nominal damages.    The following authorities cited in the brief of counsel for respondent amply sustain this position:    Smiths v. McConathy, 11 Mo. 518; Mining Co. v. Joplin, 124 Mo. 129; City of Jacksonville v. Lambert, 62 Ill. 521; Cooley on Torts, 62.

In the case first above cited this court, per NAPTON, J., said:    "It is very true that there can not be a private nuisance unless it be attended with some damage or inconvenience to the party injured, and  this idea enters into every definition of a nuisance.    Hence, the books speak of the necessity of proving the injury sustained by the nuisance, as well as the continuance or erection of the nuisance.    But it is very material to the plaintiff  that the distinction between the nature and amount of damage which will constitute a nuisance and the extent of injury which has actually resulted to the plaintiff from the nuisance, be preserved.    What constitutes a nuisance is a question of law for the determination of the court.    If the facts stated in the declaration do not amount to a nuisance, the defendant can demur and have the question of law decided by the proper tribunal.    But if the facts averred do constitute a nuisance, it is sufficient for the plaintiff to prove them, and it is not necessary that he should also prove that he has been specially injured by such nuisance."

Instructions 8 and 10 for defendant were erroneous in the particulars above mentioned.

We deem it unnecessary at this time to further discuss the general principles of law governing this case, because when it was here on the former appeal we sufficiently expressed our views on the subject.

The circuit court did right in sustaining the motion for a new trial on the two grounds stated.

The judgment is affirmed.

All concur, except *Robinson, J.,* absent.