D. H. SMITH, Appellant, v. CITY OF SEDALIA, ·Appellant.

In Banc, June 20, 1912.

1. **SUIT PENDING: Sewage on Farm: Permanent Injury.** A suit brought in 1895 by the owner for injuries to his farm caused by the construction by a city of a main sewer in 1893 to within six hundred feet of the farm, whose sewage is there emptied into a creek which flows through the farm, polluting its waters, rendering them unfit for the use of man or beast and contaminating the air with noxious odors, but which has not since been further extended, although the amount of sewage has been increased, owing to the growth of the city and the construction of district sewers, in which damages in the market value of the farm and depreciation in its rental value are demanded, still pending and undecided, is under the statute (Secs. 1800 and 1804, R. S. 1909), if pleaded, a bar to another suit brought in 1902 ih which damages to the rental value of the farm, caused by the same sewer, are claimed. The sewer is permanent in character and evidently was intended to be permanent; and the appropriation of the farm is the same, as to the measure of damages, as if the city had in 1893 or previously instituted condemnation proceedings to acquire the use of the stream, in which case there could have been but one assessment of damages due to the permanent injury, past and future. And the petition in the first suit asking for damages to the market value of the farm and for a depreciation in its rental value was broad enough to embrace a claim for depreciation in rental value alone asked for in the second suit. The owner is entitled to depreciation in the market value of the farm if the injury be permanent, or to be compensated for actual loss of rents, or for destruction of use and occupation,

but he is not entitled to all three, as separate damages, even if all three be shown. Full damages can be awarded to defendant in the first suit still pending.

2. ―――: ―――: ―――: Injunction. The owner of a farm cannot have damages from the city for turning its sewage into a creek upon his farm, and also an injunction to restrain the nuisance, the injury being of a permanent character. A recovery of damages for the appropriation of the creek by the city has the effect of confirming the right of the city to sewer into the stream as effectually as if that right had been obtained through condemnation.

3. ―――: ―――: ―――: ―――: Consequential Damages: Payment Before Appropriation. The Constitution does not require consequential damages to be paid in advance of the work. So that a city which constructed its sewer to within six hundred feet of plaintiff's farm was not required to pay him the damages that would result to the farm before there turning the sewage into a stream which runs through the farm and whose waters were thereby polluted, since such damages were consequential; and an injunction will not lie to restrain the city from making such use of the stream until it can bring a condemnation suit, nor does its failure to pay in advance in any wise impair plaintiff's right to compensation.

4. ―――: ―――: ―――: ―――: Remedy at Law: Great Public Injury. The court will not enjoin the further operation of a city's great and costly sewer system, with the attendant danger to public health and convenience, at the suit of a farmer into a stream on whose farm the sewage is emptied, who has an ample remedy at law for damages.

Appeal from Moniteau Circuit Court.—*Hon. W. H. Martin*, Judge.

AFFIRMED (*in part*).

*Charles E. Yeater* and *Mortgomery & Montgomery* for plaintiff-appellant.

(1) The first point of the city that the nuisance complained of is a permanent injury and that all damages must in consequence thereof be recovered in one action has been heretofore adjudicated and put at rest in Smith v. City, 152 Mo. 300; and further the statement to the effect that the sewer was completed in Oc-

tober, 1893, is erroneous, as it appears from the record that districts 10, 11, 15 and 16, were added to the system from May 28, 1894, to July 18, 1898; and the plaintiff, having sued for loss of rents with a count in equity for the abatement of the nuisance by injunction in the first suit which was still pending, and having again in this second suit prayed the abatement of the nuisance, could not recover permanent damages in this second suit; nor can the plaintiff without his consent by election be forced to have permanent damages assessed in this action which would thereby deprive him of his right in equity for an abatement of the nuisance, and of his constitutional right to have his damages assessed and paid before his rights in his property are divested. Smith v. City, 152 Mo. 300; Sec. 21, art. 2, Constitution; 4 Sutherland on Damages (3 Ed.), sec. 1046; Consumers Co. v. Pinkert, 92 S. W. (Ky.) 957; Morgan v. Danbury, 67 Conn. 484; Uline v. Railroad, 101 N. Y. 122; Vogt v. Grinnell, 98 N. W. (Iowa) 782; Carmichael v. Texarkana, 94 Fed. 564. (2) The second point made by the city to the effect that error was committed in excluding evidence tending to show that the surface drainage washed on plaintiff's land before any sewer was built, and was more injurious than the condition after its construction, was practically made *res adjudicata* in this case in Smith v. Sedalia, 182 Mo. 9, and the further contention made in this point by the city, that the burden was on the plaintiff to show that he was injured by the defendant's acts, was ruled to the contrary in Smith v. Sedalia, 182 Mo. 12, where this court says: ''If the facts averred do constitute a nuisance, it is sufficient for the plaintiff to prove them, and it is not necessary that he should also prove that he has been especially injured by such nuisance.'' Smith v. McConathy, 11 Mo. 522; Jones v. Hannovan, 55 Mo. 468; Paddock v. Somes, 102 Mo. 237; Bungenstock v. Drainage Dist., 163 Mo. 222; Mize v. Glenn, 38 Mo. App. 104. (3) The plaintiff was en-

titled to a peremptory instruction to the jury, that a finding must be in his favor, in as much as the defendant, by its answer admitted that it had collected sewage in a sewer system and had cast it on the plaintiff's land, which admitted facts constitute a nuisance. Smith v. Sedalia, 182 Mo. 12. (4) The fourth contention for the city, that the jury should not have been instructed to give damages for the depreciation in rental value and injury to the comfortable use and occupation, is precluded by the specific ruling of this court on this particular instruction in Smith v. Sedalia, 182 Mo. 11 and 12, which particularly directs such a recovery of damages in this exact language. Furthermore, the plaintiff's testimony showed not only a depreciation of one-half of the rental value of the 200 acres of woodland pasture, constituting the south half of the farm, but also showed that the residence on the farm, lying north from the running sewage, was made disagreeable by the foul smells blown therefrom. Smith v. Sedalia, 182 Mo. 10. (5) The jury should not have been instructed, as asked by the defendant, and as contended for in its fifth point of its brief, that unless the waters of Cedar Creek running through plaintiff's lands were polluted by the construction of defendant's sewer system to a greater degree than they would have been from the natural drainage running into said creek, if the sewer had not been built, then the finding should be for the defendant. The defendant's answer and the undisputed facts, show that the defendant had collected sewage and had thrown it in a body on plaintiff's land and that constituted a nuisance, and, irrespective of whether damages ensued, or even if benefits thereby resulted, it would have been error to have instructed the jury to find, under circumstances as set forth above, for the defendant. Smith v. Sedalia, 182 Mo. 12; Jones v. Hannovan, 55 Mo. 468. (6) A case involving this same sewer between the same parties has twice been before this court and is reported in 152 Mo.

283, and 182 Mo. 1. Plaintiff's remedy is in equity for the abatement of the nuisance. Its jurisdiction is predicated upon the broad ground of preventing irreparable injury, interminable litigation, a multiplicity of actions and the protection of plaintiff's right of property. No other court can afford a full and complete remedy in such cases. It has been universally exercised in similar cases. Paddock v. Somes, 102 Mo. 240; Welton v. Martin, 7 Mo. 310; Smith v. McConathy, 11 Mo. 522; Baker v. McDonald, 178 Mo. 472; Realty Co. v. Deere, 208 Mo. 83; Mining Co. v. Joplin, 124 Mo. 135; Samons v. Gloversville, 175 N. Y. 346; Ice Co. v. Philadelphia, 156 Pa. St. 54; Pettigrew v. Evansville, 25 Wis. 223; Butler v. Thomasville, 74 Ga. 570; O'Brien v. St. Paul, 18 Minn. 176; Atty.-Gen. v. Birmingham, 4 K. & J. 528; City v. Bond, 96 Ind. 242; Ashley v. Port Huron, 35 Mich. 301; Voight v. Grinnell, 98 N. W. (Ia.) 782; Madison v. Sulphur Co., 83 S. W. (Tenn.) 658; Barnett v. Cemetery, 159 Ill. 390; Truett v. Assn., 50 L. R. A. 564; Foncannon v. Kirksville, 88 Mo. App. 279; Edmondson v. Moberly, 98 Mo. 526; Safe Dep. Co. v. Kennett, 101 Mo. App. 394; Gould on Waters, sec. 546; Bank v. Kercheval, 65 Mo. 688; Gould v. Rochester, 105 N. Y. 46; Chapman v. Rochester, 110 N. Y. 276; Carmichael v. Texarkana, 94 Fed. 565; Good v. Altoona, 162 Pa. 493; Beach v. Elmira, 22 Hun, 163; Merton v. Chester, 2 Del. Co. 459; Morgan v. Danbury, 67 Conn. 484; Valparaiso v. Moffett, 12 Ind. App. 250; Morse v. Worcester, 139 Mass. 389; Nolin v. New Brittain, 69 Conn. 668; Hooker v. Rochester, 37 Hun, 186; Cator v. Board, 5 Best S. 115; Wharf Co. v. Portland, 67 Me. 46; Mansfield v. Hunt, 19 Ohio C. C. 488; Owens v. Lancaster, 182 Pa. 257; Jacksonville v. Doan, 145 Ill. 28; Evansville v. Decker, 84 Ind. 325; Van Pelt v. Davenport, 42 Ia. 308; Perry v. Worcester, 6 Gray, 544; Draper v. Mackey, 35 Ark. 497; Woodyear v. Schaffer, 57 Md. 12; Holsman v. Bleaching Co., 14 N. J. Eq. 347; Mayor

v. Mfg. Co., 59 Md. 96. (7) It is no objection to the exercise of injunctive relief that the city has adopted the natural course of drainage, has spent large sums in constructing its system of sewers and it has no other outlet for the sewage. Smith v. 'Sedalia, 152 Mo. 302; Beach v. Elmyra, 22 Hun, 163; Byrnes v. Cohoes, 12 N. Y. S. C. 602; Hooker v. Rochester, 37 Hun, 184; Peterson v. Santa Rosa, 119 Cal. 347; Platt v. Waterbury, 77 Conn. 550; Safe Dep. Co. v. Kennett, 101 Mo. App. 394; Gould on Waters, sec. 546; Addison on Torts (2 Ed.), sec. 1085; Wood on Nuisance (3 Ed.), secs. 427-434-782; Dwight v. Hayes, 150 Ill. 273; Robb v. La Grange, 158 Ill. 28; High on Injunction (2 Ed.), sec. 810. The city should proceed in accordance with the requirement of sec. 21, art. 2, of the Bill of Rights of the Constitution and the statutes and condemn the right of way for the sewage by paying plaintiff such damages as should be awarded him. The law is not disposed to help one who will not help himself and the remedy so easily at hand and convenient is a perfect answer to all the complaints of the city in this respect. Mining Co. v. Joplin, 124 Mo. 135; Van De Vere v. Kansas City, 107 Mo. 84; Uline v. Railroad, 101 N. Y. 114. (8) No acquiescence or consent of the plaintiff is shown. His simple silence under the circumstances disclosed by the evidence created no estoppel. By no act or conduct of his was the city led into any course of proceeding. They continued to construct additional sewer system after plaintiff had commenced his action to abate the nuisance. They did it under claim of right. Smith v. Sedalia, 152 Mo. 283; Chapman v. Rochester, 110 N. Y. 226; Galloway v. Railroad, 128 N. Y. 153; Maupin v. Railroad, 171 Mo. 195; Lead Co. v. White, 106 Mo. App. 232; Thomas v. Cannery Co., 68 Mo. App. 359; Spurlock v. Sproule, 72 Mo. 510; Bales v. Perry, 51 Mo. 449. Any acquiescence could at most create only a license revocable at pleasure. Dwight v. Hayes, 150 Ill. 281; Pitzman v. Boyce,

111 Mo. 387; Lead Co. v. White, 106 Mo. App. 222; Scheurich v. Light Co., 109 Mo. App. 406; Muellor v. Fruen, 36 Minn. 273; Leonard v. Spencer, 108 N. Y. 338; Tiedeman on Real Property, sec. 653. (9) The pendency of the former action for damages for a different period of time is not a cause for abating present action. Such action was not vexatious or unnecessary. It was necessary to prevent the bar of the Statute of Limitation. The causes of action are not identical. Rodney v. Gibbs, 184 Mo. 10; Warder v. Henry, 117 Mo. 541; State ex rel. v. Dougherty, 45 Mo. 294. (10) The interest of the public and those connecting with the city's sewer system, will not be affected by a proper decree of injunction which can preserve the status for such time as may be necessary for the city to proceed with diligence and without delay to a condemnation of the right to conduct its sewage over plaintiff's land instead of wilfully persisting in its unlawful act as an intentional tort-feasor to the plaintiff's damage. Gray v. Patterson, 48 L. R. A. 722; Mills v. Cambridge, 117 Mass. 401.

*W. W. Blair, C. C. Kelly, W. M. Williams, W. G. Lynch, M. A. McGruder* and *E. W. Couey* for defendant-appellant.

(1) The sewer system complained of was built in permanent form and will continue to discharge the sewage of the city into the stream in question, "without change from other cause than human labor." It is, therefore, a permanent injury to plaintiff's land, if any injury it be at all, and all the damages resulting from a permanent nuisance must be sued for in one action. Springs Co. v. McCray, 56 S. E. 216; Paris v. Allred, 43 S. W. 62; Madisonville v. Hardman, 92 S. W. 930; Troy v. Railroad, 55 Am. Dec. 187; Huntington v. Stemeh, 77 N. E. 407; Gas Co. v. Thomas, 59 N. W. 925; Baldwin v. Gas Co., 10 N. W. 317; Powers v.

Council Bluffs, 45 Iowa, 652. There was no occasion for harassing the defendant with a second suit. All the damages from a permanent injury may be assessed at one time. The plea that another suit was pending between the same parties for the same cause of action when the present suit was begun, was well taken and constituted a proper defense. R. S. 1899, secs. 598, 602; 1 Ency. Pl. & Pr. 750. It is no answer to say that plaintiff only asked for damages in the first suit on account of depreciation in the rental value, to the time of filing the petition in that case. If the injury was permanent, all the damages claimed could and should be included in one action. Smith v. Sedalia, 182 Mo. 12; Slattery v. St. Louis, 120 Mo. 183; Powers v. Council Bluffs, 45 Iowa, 652; Powers v. Railroad, 158 Mo. 87; Bungenstock v. Drainage Dist., 163 Mo. 222; Wolters v. St. Louis, 132 Mo. 1. A plaintiff having one cause of action cannot split it up and bring several suits, and when this is done the first suit may be pleaded in abatement to the subsequent ones. Wagoner v. Jacoby, 26 Mo. 532; Mateer v. Railroad, 105 Mo. 320. (2) The sewer was completed and the injury to plaintiff's land if any, done in October, 1893. This action was not begun until March 6, 1902. The Statute of Limitations of five years was a good defense to the present suit. Springs Co. v. McCray, 56 S. E. 216; Hay v. Lexington, 71 S. W. 867; Powers v. Council Bluffs, 45 Iowa, 652; Powers v. Railroad, 158 Mo. 87. (3) The court below tried the case upon an improper theory as to the measure of damages and erred in overruling defendant's objection to that theory and in admitting testimony as to the depreciation in the rental value of the farm. Slattery v. St. Louis, 120 Mo. 183; Tegler v. Kansas City, 95 Mo. App. 166; Paris v. Allred, 43 S. W. 62; Gas Co. v. Thomas, 59 N. W. 925; City v. Hardman, 92 S. W. 930. (4) Error was committed in excluding evidence tending to show that the condition of Cedar Creek, on account of the

surface drainage which was washed into it before any sewer was built, was worse and more injurious to plaintiff's land than the condition of said creek after the building of the sewer. The burden was on the plaintiff to show that he was injured by the defendant's acts, and this evidence was competent upon that question. 3 Sutherland on Damages (2 Ed.), sec. 1037. (5) The court properly refused the injunction prayed by plaintiff. He had a plain and adequate remedy at law for the assessment of all damages, past, present and prospective, for any injury sustained by him in consequence of the construction of defendant's sewer system. Powers v. Railroad, 158 Mo. 87; Paris v. Allred, 43 S. W. 62; Vickers v. City of Durham, 44 S. E. 685; Madisonville v. Hardman, 92 S. W. 930; Herr v. Asylum, 61 S. W. 283; Huntington v. Stemeh, 77 N. E. 407; Gas Co. v. Thomas, 59 N. W. 925; Springs Co. v. McCray, 56 S. E. 216; Bungenstock v. Drainage Dist., 163 Mo. 198. (6) The sewer system was completed, at a cost of almost one hundred thousand dollars to the citizens of Sedalia, immediately after the 8th of October, 1893, and there has been no change after that time. This suit for an injunction was not begun until nearly nine years thereafter, plaintiff in the meantime being a resident of the city of Sedalia, owning a residence and store-houses therein, which he connected with said sewer system, and, at the time he was applying for an injunction, was himself receiving the benefit of said sewers. After this long delay and acquiescence on his part and the use of said sewer for his own benefit, he is not entitled to relief in equity, but will be remitted to his remedy at law. Logansport v. Uhl, 50 Am. Rep. 109; Traphagen v. Jersey City, 29 N. J. Eq. 206; 16 Ency. Law (2 Ed.), p. 357; 22 Cyc. 779, c and d; Welton v. Martin, 7 Mo. 307; Property Co. v. Railroad, 115 Mo. 613. (7) "The interests of the public are to be taken into consideration by the court, and when the issuance of an injunction will cause serious

public inconvenience or loss, without a correspondingly great advantage to the complainant, no injunction will be granted.'' 22 Cyc. 784-K.; Herr v. Asylum, 61 S. W. 283; Gray v. Patterson, 48 L. R. A. 721; Logansport v. Uhl, 50 Am. Rep. 109; Torrey v. Railroad, 18 N. J. E. 293; 29 Cyc. 1231-K; Vickers v. Durham, 44 S. E. 685; Edwards v. Mining Co., 38 Mich. 46.

FERRISS, J.—The following statement of facts is taken from the opinion of the Kansas City Court of Appeals rendered in this cause at the April term, 1912:

''The cause of action alleged in the petition is the wrongful pollution of a natural watercourse which runs through plaintiff's farm of four hundred acres, just north of Sedalia. The cause of the pollution is sewage from the city collected by defendant's system of sewers and discharged into the stream from the mouth of the main sewer at a point about 200 yards from the south boundary of plaintiff's farm. The length of the stream through the farm is about one mile, and the sewage is carried—so plaintiff contends in his petition and proof—over the entire course of the stream through the farm. The water is made unfit for the use of man or beast and the adjacent air is contaminated with noxious odors. The farm is highly improved, was devoted principally to stock raising, and, before the creation of the nuisance of which plaintiff complains, the stream afforded a bountiful supply of pure and wholesome water for the live stock pastured on the farm. At first the sewers of Sedalia were private, but in 1887 they became public, and the city extended the system from time to time. The mouth of the main sewer, built under an ordinance passed in 1887, was 4140 feet south of plaintiff's land. In 1891 the sewer was extended 2640 feet northward, and in 1893 another extension of the city brought its terminus to a point only 600 feet from the south line of the farm. No extensions or changes have been made

in the main sewer since that year. The present suit was instituted in the circuit court of Pettis county in March, 1902. The petition is in two counts. In the first, plaintiff seeks to recover damages inflicted by the nuisance during the preceding five years, and the damages claimed are those resulting from the injury to the rental value of the farm during that period. The second count pleads a cause in equity, and the prayer is that defendant 'be enjoined from depositing sewerage from its said sewer system into the bed of Cedar Creek or elsewhere, from which the same may be carried into or upon the premises of plaintiff, and upon final hearing of the cause will adjudge the acts of the defendant wrongful in creating a nuisance and order the same abated,' etc.

"The suit was taken to Moniteau county on change of venue. The cause pleaded in the first count was tried to a jury in 1905, resulting in a verdict and judgment for plaintiff for $2000. At the same term the court tried the issues tendered in the second count and decided them in favor of defendant. Plaintiff appealed from the judgment rendered on the second count, and defendant appealed from the judgment on the first count.

"In April, 1895, plaintiff commenced a suit in the circuit court of Pettis county against defendant on account of the same nuisance. He claimed damages resulting from the depreciation of the value of the farm and its rental value. A trial in Pettis county resulted in a verdict for defendant, but plaintiff's motion for a new trial was sustained, and defendant appealed to the Supreme Court, where the judgment granting a new trial was affirmed. [Smith v. Sedalia, 152 Mo. 283.] Afterward, on motion of plaintiff, the venue of the action was changed to Johnson county, and on a trial there before a jury defendant again prevailed, but, as before, the court sustained plaintiff's motion for a new trial, and defendant appealed to the

Supreme Court. The judgment granting a new trial was affirmed at the April term, 1904. [Smith v. Sedalia, 182 Mo. 1.]· Since then that action has been suffered to sleep in the circuit court of Johnson county, where it is still pending, and the activities of the parties have been centered on the present action. Defendant contends in its answer and briefs that the pendency of the first suit is a bar to the prosecution of the second.''

The appeals were allowed in the first instance to this court, but later the cause was transferred to the Kansas City Court of Appeals. [228 Mo. 505.] Upon a hearing in that court, the judgment was reversed and the cause remanded with directions to enter judgment for defendant on both counts. On rehearing, the judgment rendered on the original hearing was reentered. The court held the pending suit filed in 1895 a bar to this suit. One of the judges, however, deeming the decision in conflict with the decisions of this court in Smith v. Sedalia, .152 Mo. 283, and Smith v. Sedalia, 182 Mo. 1, the cause was certified to this court for final determination.

In addition to the above statement of facts, it may be proper to say that in the first suit filed by plaintiff in 1895, above referred to, he not only claimed damages as stated, but also, in the same count, prayed for an injunction to restrain the city from further maintaining and operating said sewer. The case, however, was tried as if it were simply a suit at law for damages, and was so construed by this court on the appeal reported in 152 Mo. 283.

The allegations concerning the injury caused by the sewer are substantially the same in both cases, with this exception, that in the present case there is no allegation of depreciation in the value of the farm, but the allegation is confined to the use and rental value. In the first suit damages were claimed for the

period of time from plaintiff's purchase up to the date of filing the suit.

I. The first and important question is whether the former suit is a bar to this one. The answer to this depends upon whether the injury complained of in that case was permanent in character. If it was, then as this is for the continuation of the same injury, the two cases present the same cause of action, and the pendency of the first suit is a bar to this, under sections 1800 and 1804, Revised Statutes 1909, which provide that another suit pending in this State for the same cause may be pleaded in bar of a second suit.

The main sewer which discharges into Cedar Creek was completed in 1893 up to within six hundred feet of plaintiff's land, and its effect upon the stream became manifest at that time. It was designed to serve a large sewer system. This main sewer has remained without further change. It was evidently intended to be permanent. At the time of the trial it was the outlet to a sewer system which served the larger portion of the city of Sedalia, and which cost about $100,000. No practical way has been demonstrated for disposing of this sewage other than by the use of this watercourse, which is the natural drain for that portion of the city. Plaintiff attempted, unsuccessfully we think, to show that a septic tank would satisfactorily dispose of the sewage. It is true that since the completion of this main sewer, in 1893, additional district sewers have been incorporated into the general system, and doubtless others may be added hereafter. It is also true that as the population grows the main sewer will discharge an increased volume of contents into the creek. This increase in use, however, is incidental to all sewers, but does not affect the question of the permanent character of the injury. If condemnation proceedings had been instituted in 1895 to acquire the use of this stream, the damages would

have been fixed for all time, notwithstanding the impossibility of ascertaining at that time the extent of future use that might be made of the sewer. For this reason the damages would necessarily be to some extent conjectural; but that fact would not deprive the city of the right to condemn, nor prevent the ascertainment of final damages. In 1893, therefore, the sewer was, so far as human wisdom could forecast, a permanent institution, subject only to an increase of use. Had the city then condemned, as plaintiff now claims was its duty, the watercourse would have been lawfully appropriated for such use as the wants of the city might require, but the damages would have been fixed then, as best could be done, for all time. When, therefore, plaintiff sued the city in 1895, his cause of action was complete for a permanent injury. He stated such a cause of action in April, 1895, according to our construction of his petition in that case. [152 Mo. l. c. 290, and 182 Mo. l. c. 6.] It is true the petition also alleges injury to the use and rental value, and also prays an injunction against the city; but if the injury was permanent the petition contains an allegation sufficient for a recovery on the ground of diminution in market value, which is the proper measure of damages for such permanent injury. Of the prayer for injunction we will speak later.

It is urged that this sewer system is not permanent, because it is within the power of the city to discontinue its use. The plaintiff ought not to complain of this possibility, if his damages are fixed on the basis of a permanent injury. The same possibility exists in every taking of property for public use. A railroad right of way or a street may be abandoned. We can only judge of the future by probabilities based on experience. So far as can be judged now, or could have been judged in 1895, this sewer is permanent. Nothing said by us in the former appeals is contrary to this conclusion. On the first appeal (152 Mo. 283) it was con-

tended by the city that inasmuch as sewage from the · city went into this creek prior to 1889, the date of plaintiff's purchase of the land, the cause of action for permanent injury was completed before his purchase, and belonged to the prior owner. This claim was disallowed by the court, because it was not until after the purchase by plaintiff that the sewer was completed far enough to show the substantial nature of the injury. That decision holds, on this point, that the injury was not permanent prior to 1889. Nothing is said by us in the second appeal (182 Mo. 1) to the effect that the injury was not permanent. On the contrary, we say there that plaintiff is entitled to compensation for depreciation in the market value, if that be shown. This, of course, on the theory of permanent injury. We also say that he is to be compensated for actual loss of rents, if that be shown, and for destruction of use and occupation, if that be shown, but we did not mean that there could be a recovery for all three, nor that repeated suits could be maintained for any of the grounds of injury. The following authorities sustain our views as to the permanency of the injury and proper measure of damages: Slattery v. City, 120 Mo. 183; Bungenstock v. Drainage Dist., 163 Mo. 198; City v. Allred, 43 S. W. 62; City v. Hardman, 92 S. W. 930; Kellogg v. Kirksville, 132 Mo. App. 519. We cite, with approval, the following from the opinion of JOHNSON, J., of the Kansas City Court of Appeals, in this case:

"These authorities compel us to say that the nuisance in question is permanent, and that plaintiff, if injured thereby, had a cause of action for his damages past and future, all of which were comprehended in and were to be measured by the depreciation in the maket value of his land caused by the presence of the sewer. For eighteen years past the sewer had remained in its present condition. It is just as substantial and enduring as a railroad embankment, drainage ditch, highway bridge, street pavement, office building or city hall. It

was built without any intention or expectation that it would be removed or materially changed for years to come, and if the present action was one for permanent damages and was the only suit pending between the parties, we would not hesitate in declaring that plaintiff had made out a case for the jury, and that the true rule for measuring his damages was the depreciation in the market value of the land.''

This suit is not grounded upon trespass merely, nor upon nuisance, although the injury takes the form of a nuisance, but upon the constitutional right to compensation for property damaged for public use (Webster v. Railroad, 116 Mo. l. c. 118; Turner v. Railroad, 130 Mo. App. 540); and it is so argued in plaintiff's brief. The city, by proper proceedings to that end, had the right by statute to secure the use of this stream for sewer purposes. The city did not condemn, but appropriated the use. Such action, however, does not deprive the plaintiff of his right to compensation, nor does it affect the measure of damages, which, for such use by the city, whether by condemnation or appropriation, is the diminution in market value of the land damaged. As this court said in McReynolds v. Railroad, 110 Mo. l. c. 488, "no good reason, founded upon principle, can be assigned why the same rule should not be applied in both classes of cases'' (condemnation and appropriation); "the injury is the same, the damage is the same, and the compensation should be the same.''

Both suits brought by plaintiff are, substantially, actions for damages for injury to his land resulting from a wrongful appropriation by the defendant city. He concedes the right of the city to condemn, and complains because it has not done so, insisting in effect that the city shall put him in the position to claim permanent damages; but by his 1895 suit he has put himself in position to claim the same measure of damage in full compensation for the injury.

II. Holding as we do that the injury is permanent, and that damages in full compensation can be awarded in the suit pending in Johnson county, such damages to be measured by the decrease in market value of the land caused by the sewer, it is obvious that plaintiff cannot have such compensation and also maintain a suit for injunction. A recovery of damages as indicated would have the effect of confirming the right of the city to sewer into the stream as effectually as if the right had been obtained through condemnation. [Doyle v. Railroad, 113 Mo. 280.]

The plaintiff contends that the city should have condemned the watercourse for sewer purposes, that it should do so now, and that because it has not done so he is entitled to injunction. He did not seek to enjoin the building or extension of the sewer, although he saw the work done, and knew that its use must necessarily befoul his stream. This effect became obvious in 1891; yet he did nothing to oppose the extension of 1893. The condition during this period appears from the following statement of the evidence made by VALLIANT, J., in Smith v. Sedalia, 152 Mo. l. c. 291:

"That beginning in 1889, and continuing to 1895, the city constructed district sewers, eleven in number, emptying into the main sewer above mentioned; that until 1891, when the first extension of the main sewer in the direction of plaintiff's farm was made, much of the offensive character of the sewage was dissipated in the open air before it reached the plaintiff's land, although even then an examination of the water in the creek showed contamination, but that after the extension of 1891 and the second extension of 1893, with the addition of the several district sewers above mentioned, the water became entirely unfit for use and dangerous not only to the cattle, but also to the health and comfort of the tenants of the farm; that in 1893 plaintiff made oral complaint, and in 1894 written complaint to the city officers of the same, but without

avail.  There was also testimony for the plaintiff tend-
ing to show the depreciation of the rentals and value of
the land within the periods complained of.''

Plaintiff waited until the city had completed the
structure which caused the damage, waited until it had
become a necessity to Sedalia, and then asked a court
of equity to restrain the use by the city until it should
acquire a right by condemnation, conceding at the same
time that the city had a right to condemn.  Inasmuch
as in such condemnation he would get in damages just
what he can get by the suit now pending, it follows that
he had in 1895 a complete remedy at law.

Plaintiff appeals to the constitutional provision
against taking private property for public use without
compensation, and particularly to this clause:  "And
until the same [compensation] shall be paid to the
owner, or into court for the owner, the property shall
not be disturbed or the proprietary rights of the
owner therein divested.''  But the city has not dis-
turbed the property of plaintiff, nor divested him of
any proprietary rights.  It has not invaded his land,
but has erected a structure no nearer thereto than six
hundred feet.  The damages to plaintiff are consequen-
tial.  As to such damages, the Constitution does not
require that they be paid in advance of the work.  The
city had a right, under the statute, to utilize this water-
course for sewer purposes. [Secs. 1524, 1544, R. S.
1889; Secs. 9281, 9298, R. S. 1909; Mining Co. v. Joplin,
124 Mo. 137.]  Its failure to first condemn in no way
impairs plaintiff's right to compensation.  In fact, it
would be difficult to measure such consequential dam-
ages before the structure from which they arise is
erected and the injurious effects become manifest.
The constitutional provision above referred to received
full discussion in Clemens v. Ins. Co., 184 Mo. 46.  In
that case, after reviewing the authorities, GANTT, J.,
concludes:  "Where the property of the citizen is not
taken, and his proprietary rights not disturbed, but

the damage to his property is purely consequential, he is not the entitled to have the same ascertained and paid before the proposed public work is done, and is not entitled to have the work done in pursuance of valid legislature and municipal authority enjoined until his damages are ascertained and paid, but that his remedy is one at law for damages.'' Under this authoritative construction of the Constitution, but one question arises in this connection, namely, is the damage here consequential? We rule that it is.

For still another reason there can be no injunction in this case. The writ of injunction is an extraordinary remedy. It does not issue as of course, but somewhat at the discretion of the chancellor. It is his duty to consider its effect upon all parties in interest and to issue it only in case it is necessary to protect a substantial right, and even then not against great public interests. An apt discussion and application of this doctrine are contained in the opinion of LAMM, P. J., in Johnson v. Railroad, 227 Mo. 1. c. 450.

Surely no chancellor would enjoin the further operation of this large and costly sewer system, with the attendant danger to public health and convenience, when it clearly appears that any injury caused to plaintiff by the sewer can be fully compensated by a pending action at law.

We approve the very able opinion written by JOHNSON, J., of the Kansas City Court of Appeals, in this case, and the conclusion reached therein.

The judgment below upon the first count is reversed, and affirmed upon the second count. *Kennish* and *Graves, JJ.,* concur; *Brown, J.,* in result; *Lamm, J.,* having been of counsel, takes no part in the case; *Valliant, C. J.,* absent; *Woodson, J.,* dissents.