## EMMA D. FANSLER, and W. D. FANSLER, Appellants, v. CITY OF SEDALIA, Respondent.

### Kansas City Court of Appeals, May 3, 1915.

1. **DAMAGES: Nuisance: City Sewage: Prescriptive Right.** A city does not acquire a prescriptive right to flow sewage upon another's land by doing so for more than ten years where the act of the city was not done under any claim of right and was not adverse in its character.

2. ———: ———: ———: ———. To establish a prescriptive right to maintain a nuisance it must be shown that the user has continued in substantially the same way and with equally injurious results for the entire statutory period.

3. ———: ———: ———: ———: **Continuing Nuisance.** Where the nuisance created is a continuing one, an owner of property affected thereby, who purchases after its erection may recover damages for injuries subsequent to his purchase.

4. ———: ———: ———: ———: ———: **Subsequent Purchaser.** Where there has been no condemnation by the city nor suit by the former owner, a purchaser of property who bought subsequent to the opening of a city sewer into a stream flowing through the property, whereby sewage is cast upon and injures the same, and a continuing nuisance is created, may maintain a suit for damages accruing since his purchase by reason of an increased flow of such sewage, but the same must be for all future time.

Appeal from Pettis Circuit Court.—*Hon. H. B. Shain,* Judge.

REVERSED AND REMANDED.

*G. W. Barnett* for appellants.

*Hall, Robertson & O'Bannon* for respondent.

TRIMBLE, J.—Appellants own a dairy farm adjoining the city of Sedalia. Brushy creek runs through said farm, and, heretofore, was a valuable feature

thereof, furnishing a supply of pure wholesome water for farm purposes. The city constructed a sewer which emptied into Brushy creek at a point about two hundred and fifty yards above the place where the stream enters said farm.

Appellants brought suit against the city, alleging that their property has been greatly damaged by the sewage thrown into said creek thereby converting it from a pure wholesome stream into such a foul and contaminated watercourse as to deprive appellants of the use thereof by rendering the farm unfit for habitation on account of the stench arising from such sewage.

Appellants bought their farm May 4, 1911, and it is conceded that the sewer emptied into the creek at that time, but appellants' testimony tends to show that on account of the limited amount of sewage at that time the water in the creek was not perceptibly contaminated and they did not know of the existence of the sewer. Late that fall they began to notice the contamination, as the water in the creek got low; and, since that, the sewage has been greatly increased from time to time up to the present until now the water is wholly unfit for use and the smell is so bad that it extends to the house and contaminates the atmosphere.

The sewer complained of was an original main sewer constructed in 1896. To it a number of lateral sewers have from time to time been connected, increasing the number of users thereof and consequently the sewage therein. One of these laterals, serving about 125 houses, has been added since appellants purchased their farm. There has also been a rapid growth of population in the district served by the main sewer, and a large number of houses have, within the last few years, been added to the lateral sewers served by it.

There is a sharp conflict between appellants' and respondent's evidence as to the present contamination of the stream, the latter's evidence tending to show

that the stream of water is substantially in the same condition now as it was when appellants bought the land in 1911, and that even now the water is substantially pure and that fish were caught from it not long ago. However, we are not concerned with the evidence since it is clear that each side has abundant testimony to support its contention as to the facts and the respective theories upon which each insists the case should have been tried. This last-mentioned feature involves the sole question we are called upon to decide.

Respondent's theory was embodied in its instruction number 1 which the court gave. It was to the effect that if the jury found that the sewer had been so far completed before appellants' purchase of the farm "as to show the substantial nature of the injury, if any, to the property in question so that the same could at that time have been ascertained, then the plaintiffs in this case have no cause of action for said injury, if any, and your finding must be for defendant; and in this connection the court instructs you if you find and believe from the evidence that the substantial and permanent nature of the injury, if any, was manifest prior to May 4, 1911, then the fact that an additional lateral system has been added to the main sewer, and the fact that there has been an increased use of said sewer, are not to be considered by the jury."

Appellants' theory is contained in its instruction number 4 which the court refused. It sought to tell the jury that "although you may believe that the plaintiffs knew at the time that they bought the land that said sewer was emptied into such land, yet, this fact does not preclude a recovery on their part, and, notwithstanding the water was to some extent contaminated or polluted by said sewage at the time of said purchase, and the plaintiffs knew thereof, yet, that will not defeat a recovery in this case unless the general character of the injury and of the acts exercised were substantially as offensive and to so great extent as at

the time suit was brought; and if you believe from the evidence at the time plaintiffs purchased the premises in question the damages could not then for all time be ascertained and estimated, then the fact that said water was to some extent impure at the time of the purchase will not defeat a recovery."

In other words, appellants' theory was and is that even if they knew the sewer was there when they bought and that it polluted the stream to some extent, yet, if, at the time of purchase, they could not for all time estimate the damages, and if the extent of such damages thereafter increased and the stream became more foul and offensive on account of increased sewage, they could still recover.

On the other hand, respondent's contention as embodied in its instruction was that if, at the time appellants bought, the substantial nature of the injury was manifest and could have been determined, then they had no case without regard to the fact that there was an increase in the amount of sewage and a consequential increase in the pollution and damage arising therefrom.

The city, by the act alleged, has collected its sewage and discharged it into the stream at a point just outside the premises where it necessarily flows to and is deposited upon said farm. And this discharge is alleged to be of such increasing quantities as to create and constitute a continuing nuisance.

The city's defense is that inasmuch as the sewer was built so as to empty into the stream prior to plaintiffs' purchase of the farm, the cause of action was in plaintiffs' predecessor in title. The existence of the sewer for more than ten years was set up in the answer and it would seem that, in some degree, the defense rests upon a statutory prescriptive right to flow its sewage upon the farm. The defense, however, in the brief is placed wholly upon the theory that if the sewer was constructed so as to empty into the stream before

plaintiffs purchased, then the cause of action became complete in their predecessor without regard to whether the sewer, when plaintiffs purchased, carried so little sewage that it could be largely absorbed by the stream and caused only slight pollution and, therefore, inconsequential damage. This defense, if allowed to prevail, means or includes the theory that if, prior to plaintiffs' purchase, there was slight pollution which could have been discovered at that time, then the then owner must claim damages for the construction of the sewer; and, although he does not, and though the city acquired no right to flow sewage into the stream, yet his purchasers cannot have any cause of action notwithstanding the fact that, since plaintiffs' purchase, the city has so much increased the discharge of sewage as to greatly injure and damage the farm. It may be well to call attention to the fact that the injury complained of is not only the pollution of the waters of the stream but also of the atmosphere over the farm and about the residence and barn. If the city cannot acquire a prescriptive right to flow sewage into the stream where such flow is increasing and producing damage of greater extent, it is difficult to see why a landowner, who may be willing to submit to the slight inconvenience of having his watercourse somewhat polluted and, therefore, asserts no right of action on that account, should be deprived of all redress when by the increased sewage he is driven from his home, merely because his predecessor in title, like himself, did not sue when no *substantial* right of enjoyment of the farm was involved.

The sewer was not put upon the farm itself, and, therefore, so far as its mere construction was concerned it was not a trespass. And while the flowing of the sewage, mingled with the waters of the stream, may perhaps have created a technical cause of action in the then owner, yet, if it did not invade some substantial right of his and create a substantial injury to the

farm so that he did not assert a cause of action therefor, can the city, without having or obtaining any right to flow such sewage onto said farm, go on and increase the flow of sewage until the farm is rendered useless and valueless and escape liability merely because such increase and damage was not done until after the farm had been sold to another? The city did not acquire a prescriptive right to maintain a nuisance on plaintiffs' farm, even though the sewer has been built for more than ten years, because the use of the stream by the city, in the condition in which it then existed, was permissive on the part of the landowners and not adverse as to them, nor was it under any claim of right. [City of Chillicothe v. Bryan, 103 Mo. App. 409; Pitzman v. Boyce, 111 Mo. 387; Smith v. City of Sedalia, 152 Mo. 283.] To establish a prescriptive right to maintain a nuisance it must be shown that the user has continued in substantially the same way and with equally injurious results for the entire statutory period. [Matthews v. Stillwater Gas, etc., Co., 63 Minn. 493; Wood on Nuisances (3 Ed.), sec. 708; Postlewaite v. Payne, 8 Ind. 104; Ball v. Ray Law Reports, 8 Ch. App. 467; Goldsmid v. Tunbridge Wells Imp. Comrs., L. R. 1 Ch. 161; Crosby v. Bessey, 49 Me. 539; Over v. Dehne, 75 N. E. 664.] Now, if the city has no prescriptive right to flow sewage on the farm in such quantities as to create a nuisance, how has it obtained the right to destroy plaintiffs' farm without being liable to pay just compensation therefor? The city did not condemn and obtain the right to cast its sewage on the farm neither was there a suit by the former owner to obtain damages therefor. If, merely because the sewer was already constructed when plaintiffs bought their land, the city can, with impunity, increase the sewage to such an extent as to deprive the plaintiffs of their land, then it can take private property for public use without just compensation, provided it is careful to go at it by very slight and imperceptible degrees. This doctrine would

not allow the landowner to wait until he suffered some appreciable damage before suing but would require him to bring his suit, possibly at a time when his full damages could not be satisfactorily estimated, although what he obtained then must satisfy him for all time. Of course this would work no injustice if the *injury* to the farm were complete and permanent, but it would cause very great injustice where, as in this case, according to plaintiffs' evidence, the damage was so slight at first that the owner made no claim therefor. If he brought suit then, he would have difficulty in proving damages since everything beyond nominal damages would have to be anticipated and would be somewhat problematical, and he would be met with the reply that none such would happen in the future; and yet, when he does bring suit, he must accept what he gets in full satisfaction for all his damages past, present and future. It would seem more consonant with justice to allow him to wait until the *injury* has developed and it can be seen with some degree of certainty just what his damages are likely to be. In the circumstances of this case, while the *construction* of the sewer is permanent, the *injury* to the farm was not permanent and did not become fully complete until the creation of the nuisance thereon by the increased sewage. And the nuisance created is a continuing one. Where it is of this character, one who purchases property affected thereby after its erection may recover damages for injuries subsequent to his purchase. [Mayor of Birmingham v. Land, 137 Ala. 538, 34 So. 613; Staple v. Spring, 10 Mass. 72; Eastman v. Amoskeag Mfg. Co., 44 N. H. 143; 3 Sedg. on Damages (9 Ed.), sec. 949; Cane v. Chicago, etc., R. Co., 54 Iowa, 255, l. c. 259; Brady v. Weeks, 3 Barb. 157.]

In the case of Smith v. City of Sedalia, 152 Mo. 283, the plaintiff sued for damages for the wrongful pollution of the water of a stream flowing through his farm, and one of the contentions of the city was that

the sewer had been constructed prior to the plaintiff's purchase in 1889, and that the cause of action, if any, was in the prior owner. But the Supreme Court, at page 300, says that is "not applicable to a case of this kind;" that the nature of the injury was such that even though when plaintiff bought in 1889 sewage had to some degree been cast upon the land, yet the extent of the injury "could not have been for all time estimated." And plaintiff's right to maintain his suit was upheld, not only in that opinion, but, without discussing the point in question, in the opinion in the same case reported in 182 Mo. 1. In these two trials plaintiff had asked not only for damages, but also for an injunction to restrain defendant from further committing the nuisance complained of, all of which, however, was in one count. The court, for this reason, would not consider anything but the damage feature. After plaintiff's right to maintain the suit had been for the second time upheld, and the trial court's action in granting him a new trial approved, plaintiff allowed the case to sleep on the docket of the court in which it was pending, and brought a new suit, putting his petition in two counts, in the first of which he asked for damages to the rental value of the farm for the past five years and in the second count asked that the defendant be enjoined. That case was tried resulting in a judgment for plaintiff on the first count and for defendant on the second count. Both sides appealed to this court where the judgment was reversed as to the first count and affirmed as to the second. The case was certified to the Supreme Court and is reported in 244 Mo. 107, where the case was disposed of in the same way. But the ground of the reversal of plaintiff's judgment on the damage count was because the former suit was a bar to the last one. The court held that both suits were "for damages for injury to his land resulting from a wrongful appropriation by the defendant city" and that damages "in full compensation can be awarded in

the suit pending in Johnson county'' (pp. 122 and 123). And what is said in that case is not in support of the idea that plaintiff could not recover for a continuing nuisance if he purchased after the sewer causing the same was erected, but on the point that when plaintiff brought a suit for damages on the cause of action there involved, he must recover all his damages at once and cannot bring successive suits for the same injury, and hence the former suit was a bar to all further action.

But that is not the case here. There has been no condemnation by the city, nor has any former suit been brought by plaintiffs or their predecessor in title. Of course, if one had been brought, then all damages must be included and recovered in that suit. But, since nothing of the kind has been done, the plaintiffs are not prevented from suing now for the damages accruing since their purchase, and such damages must be for all future time. The giving of defendant's instruction number 1 and the refusal of plaintiffs' instruction number 4 was, therefore, error. In fact, defendant's instruction number 1 authorized the jury to find for defendant without regard to what they found the evidence showed since there was no change in the sewer itself.

It is claimed by respondent that the errors above noted were joined in by appellant in the asking of instruction number 5 on their part. We do not think so. Instruction number 4 covered a feature not dealt with or touched upon in number 5 and respondent's instruction number 1 was not the same as number 5.

The judgment is reversed and the cause remanded. All concur.