RAYMORE SPECIAL ROAD DISTRICT of Cass County, Missouri, by G. B. SIMMONS et al., Commissioners, Appellants, v. A. M. HUBER, President, WESLEY KING, Trustee, and GEORGE EVANS, Composing Township Board of Raymore Township, Cass County, Missouri.

Division One, May 30, 1908.

1. **SPECIAL ROAD DISTRICTS: Act of 1905.** The Act of 1905, providing for the creation of special road districts and the construction of permanent roads by means of benefit assessments against the property included in the district, does not apply to counties under township organization, and, therefore, the township board is not required to turn over to the county treasurer for the use of the commissioners of said special road district the road funds pertaining to the township where the special road district and the township are commensurate.

2. ———: ———: **Inharmonious Statutes.** Sections 14 and 15 of the Act of 1905 are out of harmony with the Township Organi-

zation Act, in that, where the special road district is less or greater than a township, there might be different rates of taxation upon the property within the district and upon that without the district but in the township. Besides, said sections 14 and 15 do not specifically require the township board to turn over the township funds and tools to the district board, and said sections do not otherwise expressly repeal the provisions of the Township Organization Act giving to the township board the right to the funds and property of the township, and repeals by implication are not favored.

Appeal from Cass Circuit Court.—*Hon. N. M. Bradley,* Judge.

AFFIRMED.

*Allen Glenn* for appellants.

(1) The rule for interpretation of a statute is to ascertain the legislative intent. The intention expressed, technical rules should be rejected. It is not a question, can all purposes of the law be carried out? but what was the legislative intention in the enactment? Bowerman v. Min. Co., 98 Mo. App. 312; Stubbs v. Mulholland, 168 Mo. 73; Walsh v. Walsh, 15 Mo. 519; State ex rel. v. Corkins, 123 Mo. 67; Grimes v. Reynolds, 94 Mo. App. 584; St. Louis v. Lane, 110 Mo. 258; 6 Current Law, p. 1539. (2) A special road district, organized, supersedes the township board's control over the property and means of the territory within the new district; the commissioners of such special district are clothed with the managing authority over the affairs and property of such organized district.

*Chas. W. Sloan* for respondents.

(1) While it is conceded to be true that it is the province of courts in the interpretation of a legislative act to give effect if possible to the legislative intent, yet there are certain rules, which courts will follow

in getting at the intention of the Legislature. (a) The effects and consequences of any proposed construction of a law may properly be considered as an aid in ascertaining the probable intention. Kane v. Railroad, 112 Mo. 39; Bowers v. Smith, 111 Mo. 56; Chouteau v. Railroad, 122 Mo. 393; State ex rel. v. Slover, 126 Mo. 652; Hilgert v. Pav. Co., 107 Mo. App. 393; Collier Estate v. Western Pav. & Supply Co., 180 Mo. 381. (b) And where words and phrases, in different sections of an act, are contradictory, or inconsistent with the general scope and design of an act, or would lead to absurd consequences, courts will not give a literal construction, where it would manifestly defeat the purpose intended; indeed, the courts to get at the true interpretation of a law will be justified in rejecting words or phrases, when necessary. Conner v. Railroad, 59 Mo. 293; Monks v. Strange, 25 Mo. App. 15; Scarritt v. Jackson Co., 89 Mo. App. 592; State to use v. Heman, 70 Mo. 441; Bingham v. Birmingham, 103 Mo. 351; St. Louis v. Dorr, 145 Mo. 497; State v. Moody, 202 Mo. 127; 26 Am. and Eng. Ency. (2 Ed.), 655. (c) All the statutes treating of the same subject-matter should be considered, so that the meaning of any particular provision may be enlightened by a view of the general purpose pervading the entire law of the subject. Grimes v. Reynolds, 184 Mo. 688; State ex rel. v. Gordon, 197 Mo. 59. (2) The whole scheme of taxation for road purposes and the rate of taxation for public roads and repairing same in counties not under township organization is radically different from that which obtains in counties under township organization. State ex rel. v. Gordon, 197 Mo. 55; R. S. 1899, sec. 9436 (as amended by Laws 1901, p. 234); R. S. 1899, sec. 10321 (amended by Laws 1903, p. 272); R. S. 1899, sec. 10324 (amended by Laws 1901, p. 254); R. S. 1899, sec. 10326 (amended by Laws 1907, p. 419); R. S. 1899, sec. 10327 (amended

by Laws 1903, p. 274); R. S. 1899, sec. 10328 (amended by Laws 1901, p. 255).

GRAVES, J.—Plaintiffs are an alleged body politic, styled "Raymore Special Road District of Cass county, Missouri," and its three commissioners. Defendants constitute the township board of Raymore Township, in Cass county, Missouri, a political subdivision of said county—one of the municipal townships of said county. Plaintiffs filed their petition and application in the circuit court of Cass county for a writ of mandamus against defendants, whereby, "said plaintiffs ask the court to grant, issue and award a peremptory writ of mandamus to said defendants, the township board of Raymore township, compelling and commanding them, the said township board, to order the trustee of said township to pay over to the county treasurer of Cass county, Missouri, said funds, to-wit: all the road funds of said township for the use of plaintiffs as commissioners of said Raymore Special Road District and to turn over and deliver to said commissioners all tools and implements belonging to the road districts of said township and to recognize said Raymore Special Road District as a body politic as aforesaid and these plaintiffs as commissioners thereof, and for such orders in the premises as may be proper and meet."

The petition previously pleads all facts necessary to show the creation of a special road district under an act of the Legislature approved April 14, 1905, and avers that said special road district so created included all the territory embraced in the municipal township of Raymore. Whether it contains more territory is not averred.

The defendants entered their appearance, waived the formal issuance of the alternative writ, so that the petition may be taken as and for the alternative

writ. Defendants then moved to quash the alternative writ of mandamus, for the alleged reason: "Because said writ of mandamus does not state facts sufficient to constitute a cause of action." This motion to quash was sustained, and judgment entered against plaintiffs. From this judgment, plaintiffs in due form and in due time appealed.

The real question involved is whether or not the act of the Legislature approved April 14, 1905 (Laws 1905, p. 282), is applicable to counties having adopted township organization. We should have stated that by the alternative writ it appears that Cass county, prior to the creation of the "Raymore Special Road District of Cass county, Missouri," had adopted township organization, and at the time was operating under such law.

To get at the question presented an analysis of the Act of 1905, supra, is required. It appears to be an independent and new act, but makes no direct provision for the repeal of any other law or laws. Sections one to thirteen, inclusive, contain provisions for the organization of special road districts, as well as provisions for the grading and improvement of public roads within the district. The method of procedure is given in detail. The cost of such improvements is to be paid by special taxbills issued against the land of the district according to its appraised value. This cost may be all paid at once, or may be extended over a period of five years. The commissioners are authorized to issue bonds in the name of the road district, but these bonds shall be paid out of special taxbills issued during the time. The plans given in these thirteen sections of the act are very much like the plans adopted for street improvements. To set this portion of the act out more in detail would be at the expense of brevity and serve no good purpose. As to the size of the special road district, section one of the act

provides: "Said district shall contain at least two thousand acres of land of contiguous territory and may be commensurate with a municipal township, and if laid out along any thoroughfare may be of any length deemed necessary and advisable, except that every district shall be included wholly within the county organizing it."

From this provision it will be noticed that a special road district may extend from one end of a county to the other, and in so doing traverse and cross several different municipal townships. We then have sections 14 and 15, as follows:

"Sec. 14. Whenever any road district shall be organized under the provisions of this act the county clerk shall set aside to the credit of said road district the portion of the revenues for working the public roads that may be raised by direct taxation against property lying therein, according to any existing law or subsequent enactment, and said revenue shall be spent by said board of commissioners for keeping any road within said district in repair or for paying for any other needed work. Likewise shall a proper apportionment of any license taxes and poll taxes and city revenue raised and set aside to any special road district organized under article ten of chapter [151(?)] of the Revised Statutes of Missouri of 1899, be made by the county court and turned over to the commission provided for by this act. Any overseer or road commissioner who shall be such under any other law at the time of the organization of the road district shall turn over to such commission any tools, graders, scrapers or implements of any kind in his possession which may (be) by a proper apportionment belong to such district. Said commission shall have power to contract for the working or improving of said road in any manner that to them may seem best, and to pay for the same out of such revenues. Said commission

may out of such revenues pay the engineer for his estimates and specifications, except when made by the state highway commissioner or his assistants, and any other expenses for which provision is not by this act otherwise made.

"Sec. 15.  All poll taxes in any such road district shall be paid in money and placed to the credit of said road district, and shall be collected as other personal taxes."

Section 16 is simply an emergency clause.

In State ex rel. v. Gordon, 197 Mo. 55, we undertook to analyze and distinguish the various road acts of this State and to determine the question whether or not article 10, chapter 151, Revised Statutes 1899, and the acts amendatory thereto, applied to counties having township organization, and we reached the conclusion that such acts did not apply to counties so situated. We further concluded that counties under township organization, in so far as public roads were concerned, were governed by the provisions of article 14 of chapter 168. Article 10 of chapter 151, and its amendatory acts, relate to the formation of special road districts. It was in that case pointed out that the Legislature, although making amendments to each of the two articles above named, i. e., article 10, chapter 151, and article 14, chapter 168, had at all times kept them as separate and distinct schemes, of road law, one of which, by its terms, could only be made applicable to counties not having township organization, and the other only to counties having township organization. In conclusion we there said: "A great number of differences and discrepancies as strong as the foregoing could be pointed out, but these are sufficient. The two systems are so clearly distinctive that one must conclude a legislative intent, from the acts themselves, to make the one applicable to counties having no township organization, and the other

to counties having township organization.'' In the same case we also said: ''The methods of getting the poll tax lists are different; the methods of collecting, and the officers to collect, are different; a contract system is provided for by both statutes, but are so essentially different that the governmental agencies under the one would have no authority under the other.''

The law we have before us now, as stated above, is an independent act, and purports to amend neither of the laws discussed in the case of State ex rel. v. Gordon, supra. It pertains to public roads and the improvement thereof by special benefit assessments, and in this differs from either of the acts above named.

No provisions had theretofore been made for the improvement of public roads by means of special assessments of the property within the district. The first thirteen sections of this act in question relate solely to such a purpose. The improvements there contemplated are broader and different in character to any road work contemplated under the township organization act. We are not prepared to say that a valid law may not be passed and made applicable to counties under both systems of our road law discussed in State ex rel. v. Gordon, supra. Nor are we prepared to say that the first thirteen sections of this law is not such an act. However, that is not the real issue here, and we reserve our opinion thereon until such opinion is required by a concrete case. The case at bar is bottomed upon sections 14 and 15 of the act of 1905, supra. These two sections reach the road revenues and road property of municipal townships, in counties under township organization, and there are but two questions for consideration, viz.: First, does this act by implication or otherwise repeal the road laws in the township organization act so far as these road districts are concerned, and, secondly, if not, can

the two laws be harmonized so that both may stand?
Considering sections 14 and 15 of the Act of 1905,
and taking the last proposition first, it is apparent that
the two acts, i. e., this act and the Township Organiza-
tion Act, cannot be made to harmonize. The method of
levying and collecting the revenues for working public
roads is totally different. In section 14 it is provided
that the county clerk shall apportion the revenues, but
under the Township Organization Act, the county clerk
has nothing to do with the township road funds.
Under the Township Organization Act the township
board assesses the poll tax and the poll tax may be
paid either in money or labor at the election of the
taxpayer, whilst under the act before us it must be
paid in money. The two acts cannot be made to
harmonize, so far as the two sections, 14 and 15, are
concerned, except upon the theory that there are at
least two independent schemes for road work, one for
counties under township organization and one for those
not under township organization. We are not saying
that road districts could not be organized to improve
roads within certain districts by assessments having
for their basis special benefits, as in the case of streets,
but what we desire to say is that the instrumentalities
for levying and collecting road revenues for the main-
tenance and working of the road after it is improved
are so radically different that these two acts cannot be
said to be in harmony with each other. It may be
that a special road district for the improvement of
a public road by special assessments could be created
under the act, which district would have the power
to collect and expend such revenue, independent of
township organization laws, but we leave that question
to a case wherein it is a live issue. In this case the
sole question is as to whether or not the township
officers can be compelled to turn over the township road
property and the township road funds as they are col-

lected to special road districts organized under this act. As will be seen a special road district under this act may cross several municipal townships, each levy-iny and collecting a different amount for the support of the public roads, and thereby we would have the same question presented to us as in State ex rel. v. Gordon, supra, and upon which we there said: "Under this state of affairs property in the same road district, and for one and the same purpose, could be and in many instances would be, assessed differently, which would be clearly a violation of the law, and such viola-tion of the law was never contemplated by the law-making power. Again, we would have fractions of townships operating under different systems of law."

Under this act a special road district might cross the entire county, and we might have a dozen different rates of taxation for the same identical purpose, i. e., keeping up and repairing the road as improved under the first thirteen sections of the act. It can hardly be said the Legislature contemplated such and if it did such a law could not stand.

This act contemplates, among other things, that there may be one certain graded and improved road extending across the county, for which the people of that district should contribute both property and poll taxes, and which, under the township organization laws, may be varied as are the number of municipal town-ships crossed. Yet we would have the one subject for which to collect those taxes, i. e., the maintenance and repairing of this road. So that we say that the two laws are not such as can be made to harmonize. But it is urged that because in section 5 of the act are found the words "or township assessor where counties are under township organization" and the words "or with the collector of the revenue of the township or town-ships in which the road district may lie according as such county may or may not be under township organ-

ization" are found in section 10 of the act, the act
should be held to apply to counties having township
organization. The words used in the first section named
are used in connection with the commissioners getting
a valuation of the land for the special assessment, and
the words quoted as found in section 10 of the act to
the officer to collect these special assessments, but
neither of these sections refers to the revenues annually
collected for road purposes. Sections 14 and 15 do
refer to such, and herein lies the difficulty. As we
have suggested, without giving judgment thereon, be-
cause not in this case, it may be said that the county
court could establish a road district for special assess-
ments in counties under township organization, and
appraise the property in the manner provided by sec-
tion 5 and collect the special taxes through the agents
referred to in section 10, but that is beside the question
before us in the present case. After such roads are
constructed, how then are they to be kept up and re-
paired in counties having township organization?
Which law shall prevail as to the levying, collection
and expenditure of the township road funds? Shall
there be two classes of road districts in the townships,
or shall the township board divide the township in
such districts as it sees fit and expend the road taxes
upon all these roads in these districts under the direc-
tion of its own officers? These, and other questions
which might be put, clearly indicate the conflict be-
tween sections 14 and 15 of this act, and the Town-
ship Organization Act. Nor are we of the opinion
that the words herein above quoted are sufficient to in-
dicate that there was a legislative intent to divert the
road property and the annual road revenues of the
townships to the special road districts authorized by
the Act of 1905, unless it can be said that this law
by implication repeals the Township Organization Act.

212 Sup—36

Repeals by implication are not favorites of the law. Section 14 of the act says that the county court must turn over to the commission certain revenues, but there is nothing said about township boards, which have the custody of the road property and funds of the townships, turning to the commissioners any property or revenues. Had the Legislature contemplated the turning over of property in the custody and under the charge of the township boards, it would have no doubt specified them as it did county courts. We are of opinion that these two sections, which form the basis of this suit, have no reference to counties under township organization, and that the trial court was right in quashing the alternative writ of mandamus, and the judgment is therefore affirmed.

All concur, except *Valliant, P. J.,* absent.