J. T. STEWART and JOSIE STEWART, Appellants, v. CITY OF SPRINGFIELD, MISSOURI, a Municipal Corporation.—No. 37234.

FRED S. CHAPPELL and EDNA C. CHAPPELL, Appellants, v. CITY OF SPRINGFIELD, MISSOURI, a Municipal Corporation.—No. 37242.— 165 S. W. (2d) 626.

Court en Banc, September 8, 1942.

Rehearing Denied, November 12, 1942.

*A. C. Hayward, H. T. Lincoln* and *Frank B. Williams* for appellants; *Joe N. Brown* of counsel.

236

238

*Paul W. Barrett* and *Jack S. Curtis,* City Attorneys, *John S. Far-rington, Sam M. Wear* and *W. D. Tatlow* for respondent.

DOUGLAS, J.—Plaintiffs are riparian owners of land on Wilson Creek, near Springfield, Missouri. They filed separate actions for damages to their respective lands arising from the pollution of the creek caused by the discharge of the effluent of the Springfield

sewer system into the creek. Stewart and wife sued for $10,000.00, and Chappell and wife for $25,000.00.

Demurrers to both petitions, which are substantially the same, were sustained and appeals taken to this court. Here the cases were consolidated by agreement of the parties. They are companion cases to Riggs v. City of Springfield, 344 Mo. 420, 126 S. W. (2d) 1144, decided by this court in 1939. Since we have reached the conclusion that both are governed ▬▬ by the decision in that case, our discussion will be limited to the Stewart appeal.

The petition is lengthy. It covers more than forty printed pages. It shows that Springfield, then a city of the third class, under an ordinance enacted in 1892, constructed a sewer system which discharged the city's sewage into the creek. In the beginning the sewage was not of sufficient quantity to pollute the waters of the creek where they flowed by appellants' land, but as the city grew in size and the sewage increased the pollution extended to appellants' land.

In 1911 appellants and other riparian owners filed suits against the city for damages. The petitions in these suits were in two counts. One was for temporary damages accruing between 1906 and 1911 on the theory that the city had created an abatable nuisance. The other count was for the permanent injury to appellants' land on the ground the city had appropriated the use of the creek because the sewer system was permanent, and was intended to discharge sewage into the creek throughout all time causing a permanent depreciation in the value of their land. These cases were settled. The city paid $4,700.00 on the claims for temporary damages and the claims for permanent damages were dismissed without prejudice. In the settlement the landowners agreed not to bring future suits for temporary damages until the city had an opportunity to install septic tanks, but expressly reserved their rights to bring such suits "they may deem they have against the City of Springfield for the permanent injury and depreciation to their real estate should said nuisance not be abated, and this agreement shall in nowise prejudice or affect their said cause of action, and shall in nowise prejudice or affect any defense that the city may have thereto."

The sum of $100,000.00 was voted by the city and the septic tanks were built and put into operation.

In 1925 appellants and others again brought suits alleging the same claims for temporary and permanent damages. Settlement was made on the same basis as before, this time for an aggregate payment of $17,500.00.

The sum of $325,000.00 was voted and sewage disposal plants were built.

Then in 1932 appellants and others once more filed similar suits, this time settled for $25,000.00.

In 1935 and 1936 the instant suits were filed. Appellants again are claiming temporary damages for the preceding five years on the theory the city is maintaining an abatable nuisance.

The chief question before us is whether appellants may recover on their present claim for temporary damages, or are they precluded because the city has long since appropriated the use of the creek under its right of eminent domain and the statute of limitations has run against every claim appellants might have.

■ There can be no question about due process if the city has permanently appropriated the use of the creek under its right of eminent domain. Yearsley v. W. A. Ross Constr. Co., 309 U. S. 18.

■ In the Riggs case we held the city had done so under its right of eminent domain so that Riggs' entire damage had to be assessed in one action, and the statute of limitations commenced to run from the time the injury to Riggs' land became apparent. We followed the case of Smith v. Sedalia, 244 Mo. 107, 147 S. W. 597. We quoted with approval from that case as follows: "These authorities compel us to say that the nuisance in question is permanent, and that plaintiff, if injured thereby, had a cause of action for his damages past and future, all of which were comprehended in and were to be measured by the depreciation in the market value of the land caused by the presence of the sewer." If the ruling in the Riggs case is applicable here the judgment of the trial court sustaining the demurrer and dismissing the petition must be affirmed.

■■ Aside from the parties and the lands it is conceded that the petition in the present case is the same as the one in the Riggs case, except for the paragraphs alleging the three previous suits. By the stipulations for settlement and judgments on the stipulations in these suits, appellants claim the city is bound to the theory that its use of the creek is a temporary nuisance which the city could abate, and until abated the city must again respond with damages as it did on the three previous occasions. In other words, they assert the city by its course of action in the ■■ three previous suits is now prevented from claiming in this case its permanent appropriation of the use of the creek and asserting the defense of limitations. We do not find that the city is so bound.

As to the first and second suits our finding needs no discussion. In the settlements of both suits the city expressly reserved the right to raise any defense it might have in any future action. In the second case the city even pleaded the statute of limitations in its answer. In both cases appellants recognized that the city might have permanently appropriated the use of the creek by asserting a claim for permanent damages.

Turning to the allegations about the third suit we find practically the same facts in the settlement, except there was no express reservation as there was in the two previous settlements that the city could

assert any defense it might have in any future suit. The petition again claimed damages both for temporary and permanent injuries. The settlement was again made only for temporary injuries. The claim for permanent injuries was again dismissed. The settlement contained a provision that appellants could make claims in the future. It can't be said that the absence of an express provision reserving to the city the right to defend itself against such claims will prevent it from doing so. Nor do we find the city is restricted in the nature of its defense.

In all the settlements the parties agreed that their effect should not be construed as a condemnation of appellants' land or as giving the city any permanent or future rights to empty its sewage into the creek so as to pollute the water. It is plain this construction must have been made under a misapprehension as the city had years before appropriated the permanent use of the creek. There is no claim of any misrepresentation by the city. The record shows the landowners were not prevented in any way from asserting their claims for the permanent damage to their lands but that in each instance they did so.

These settlements cannot be looked upon as a contract in favor of appellants and binding the city against the permanent use of the creek, because the city has no authority to make such a contract. Section 3349, R. S. 1939, provides that a city shall not make any contract unless the same shall be within the scope of its powers or be expressly authorized by law. Regardless of the statute but on a broader doctrine such a contract is invalid and could not bind the city. The law is well settled that a municipal corporation can not surrender or contract away its governmental functions and powers. 43 C. J., Municipal Corporations, sec. 213. "The governing authority of a municipality is not permitted to abdicate through a contract any of its legislative powers and thereby preclude itself from meeting in a proper way the emergencies that may arise. 6 R. C. L. 744. 'Those powers are conferred in order to be exercised again and again, as may be found needful or politic, and those who hold them in trust today are vested with no discretion to circumscribe their limits or diminish their efficiency, but must transmit them unimpaired to their successors.' " Thus, this court held a municipality has no power to hamper the free exercise of its legislative discretion. Thompson v. City of St. Louis (Mo.), 253 S. W. 969. The authority to establish and locate sewers and to provide plans for their construction is legislative. Neill v. Gates, 152 Mo. 585, 54 S. W. 460; Whitworth v. Webb City, 204 Mo. 579, 103 S. W. 86.

Furthermore, the doctrine of estoppel cannot be applied to a municipality where it has no power under any circumstance to make the contract in question. Fleshner v. Kansas City, 348 Mo. 978, 156 S. W. (2d) 706. The case of State ex inf. McKittrick v. Springfield Water Co., 345 Mo. 6, 131 S. W. (2d) 525, on which appellants rely,

is not relevant. That case held that the City of Springfield was estopped from claiming a water company's franchise had long since expired because by the passage of numerous ordinances and other acts it had recognized the franchise as continuing in effect. But in that case the city was empowered to grant the franchise.

Nor can the judgments on the settlement agreements operate to estop the city from now relying on its permanent appropriation of the use of the creek. As we have already shown the first two settlements expressly saved to the city any defense it would care to assert in any future action against it. In the third settlement there was no such provision. Still its absence cannot permit the judgment on such settlement to operate as an estoppel against the city's raising such defense. Such issue was not considered by the trial court because the court based upon permanent damages was dismissed. Furthermore, the right of appellants to bring future actions was expressly reserved. Therefore, since the judgment on such settlement could not estop appellants from future claims of permanent damages, it did not estop the city from asserting its permanent appropriation. Estoppel by judgment must be mutual and bind both parties. If the judgment is not binding on both it binds neither. Bennett v. General Accident F. & L. A. Co., 213 Mo. App. 421, 255 S. W. 1076 and cases cited.

Appellants point out another difference in this case from the Riggs case. In the case at bar the right of the city to acquire by eminent domain an easement to empty sewage in the creek is expressly made an issue which was not done in the Riggs case. While it is true in the Riggs case the parties agreed the law of eminent domain applied and the law of nuisance was not involved, yet, despite such agreement, we considered the matter and found affirmatively that the law of eminent domain was applicable, although elsewhere the authorities on the question are conflicting. We said: "Under Sections 1524 and 1541-1544, Revised Statutes Missouri 1889, the City of Springfield had the right to condemn private property for use for sewer purposes in the same manner as other property might be condemned for public purposes. These statutes also provided that in setting up its system of sewers, public sewers should be established along the principal courses of drainage and that district sewers might be connected with such natural courses of drainage. We said, in Joplin Consolidated Mining Co. v. City of Joplin, 124 Mo. 129, 27 S. W. 406, that it was the clear implication of the language of these statutes that the principal courses of drainage may be used for sewer purposes. In that case we held that the City of Joplin had the right and power to construct the public sewer in question so that it would discharge its contents into Joplin Creek." In the Riggs case we also relied on the case of Smith v. Sedalia, 244 Mo. 107, 149 S. W. 597, supra, where this court held that the City of Sedalia had the right,

by statute, to secure the use of a stream for sewer purposes. In the Smith case, as in the case at bar, the city did not first resort to condemnation proceedings but appropriated the use of the stream. This court refused to enjoin such use of the stream because the City of Sedalia had failed to institute proceedings to condemn the watercourse for sewer purposes. The court said: "Its failure to first condemn in no way impairs plaintiff's right to compensation. In fact, it would be difficult to measure such consequential damages before the structure from which they arise is erected and the injurious effects became manifest."

We find it a common rule that "the discharge of sewage upon the property of an individual, or its discharge into a stream, so as to pollute the water and lessen or destroy the value of the stream itself, or of private property situated thereon, is generally considered compensable under eminent domain provisions." 29 C. J. S., Eminent Domain, sec. 118.

Consequently, the fact the parties in the Riggs and Smith cases conceded that the law of eminent domain governed those cases does not make them inapplicable here in view of the affirmative findings by the court that such law was controlling. Both involved the same statutory powers of cities of the third class.

In the face of these decisions appellants argue that cities of the third class did not have the power, under the statutes, to condemn or appropriate the use of natural watercourses for public drainage and sewer purposes in 1892 when the ordinance for the sewer system was enacted. They claim that such authority was not conferred on cities of this class until the adoption of the Act of 1895. Laws 1895, p. 58. This act did not repeal the sewer provisions then in effect, which were practically the same as those in the Statutes of 1889 under which the city enacted its ordinance. It merely authorized an optional and additional method for the construction of new sewer systems. The act stated in Section 18: "Nothing contained in this act shall be construed as repealing sections 97, 98 and 99, of an act entitled 'Cities of the third class,' being 'An act to repeal article 4, of chapter 30, of the Revised Statutes of Missouri of 1889, with all amendments thereto," approved April 18, 1893, which said sections 97, 98 and 99 shall continue to apply to all cities of the third class which fail to adopt the provisions of this act under the provisions of section 1 of the same." Sections 97, 98 and 99 provide for construing sewer systems and grant the power of eminent domain. Laws 1893, p. 65. In such wise the Act of 1895 recognized an existing pattern of sewer laws and merely provided an additional one.

Appellants say we cannot consider the city's defense that the statute of limitations has run because it is raised in a speaking demurrer along with other defenses. The other defenses do raise questions of fact which require evidence to support them. Our present practice

does not permit a speaking demurrer. However, we recently held that if from the face of the petition it appeared the action was barred, such fact could be considered even if raised in a demurrer which otherwise embodied the characteristics of a speaking demurrer. Halloran v. Hackmann (Mo.), 160 S. W. (2d) 769.

The allegation that the city in 1892, by ordinance, constructed the sewer, connected it with Wilson Creek and discharged its sewage into the creek is sufficient pleading to show the appropriation by the city. MacMurray-Judge Arch'l. Iron Co. v. St. Louis, 138 Mo. 608, 39 S. W. 467.

The petition further shows on its face that the injury to appellants' land was apparent in 1906 by the allegation of the claim for damages from 1906 to 1911.

Under these circumstances the question of limitations is properly before us even though it is raised in a speaking demurrer.

Appellants stress the case of Oklahoma City v. West, 155 Okla. 63, 7 Pac. (2d) 888, which involved the same issues we have here. The Oklahoma Supreme Court, following a number of Oklahoma decisions, held that the emptying of unpurified sewage in the river constituted a temporary rather than a permanent nuisance. The decision was based on the theory the nuisance was a temporary one as it could be abated by the expenditure of money and labor. In this state we follow the same general rule a temporary nuisance, as distinguished from a permanent one, is one which can be abated. Shelley v. Ozark Pipe Line Corp., 327 Mo. 238, 37 S. W. (2d) 518, 75 A. L. R. 1316. But by a consistent line of decisions in this state this rule has been held inapplicable to municipal sewer systems. Such sewer systems have consistently been found to constitute permanent nuisances. Therefore, full damages for the permanent injury must be assessed in one action. Shelley v. Ozark Pipe Line Corp., supra; Smith v. Sedalia, 182 Mo. 1, 81 S. W. 165; same v. same, 244 Mo. 107, 149 S. W. 597; Kellogg v. City of Kirksville, 149 Mo. App. 1, 129 S. W. 57; Luckey v. City of Brookfield, 167 Mo. App. 161, 151 S. W. 201; Kent v. City of Trenton (Mo. App.), 48 S. W. (2d) 571; McCleery v. City of Marshall (Mo. App.), 65 S. W. (2d) 1042; Person v. City of Independence (Mo. App.), 114 S. W. (2d) 175; King v. City of Rolla (Mo. App.), 130 S. W. (2d) 697, and Riggs v. City of Springfield, supra.

In the Riggs case we found it was not until many years after this sewer system was connected with the creek that devices for sewage purification and disposal came into common use. We held that the city should not be penalized because it alleviated the pollution of the creek by installing modern devices after it had already acquired a permanent right by appropriation to empty raw, untreated sewage into the stream. If a sewer system were to be constructed today, with modern and efficient equipment available for purifying the sewage,

a different rule might probably apply. cf. City of Harrisonville v. W. S. Dickey Clay Mfg. Co., 289 U. S. 334. But such is not this case.

We also said in the Riggs case and reassert here that under no circumstances is the city privileged to create or maintain a public nuisance in the exercise of its use of the easement. The state may enforce remedial action where such is practical.

Our decision in the Riggs case is applicable and controlling here. Appellants' claims in both cases are barred by the Statute of Limitations. The court below properly sustained the demurrers and entered judgments dismissing appellants' petitions.

The judgments are affirmed. All concur except *Gantt, J.,* absent.