Aaron **LEWIS, (Plaintiff) Respondent,**

v.

**CITY OF POTOSI, a municipal corporation, (Defendant) Appellant.**

No. 30530.

St. Louis Court of Appeals.
Missouri.
July 18, 1961.

Samuel Richeson, Dearing, Richeson & Weier, Hillsboro, and Larry J. Casey, Potosi, for appellant.

Leo J. Rozier, Perryville, and Joseph G. Stewart, St. Louis, for respondent.

ANDERSON, Presiding Judge.

Plaintiff, Aaron Lewis, is a riparian owner of land on Mine Au Breton Creek near the City of Potosi in Washington County, and filed this action against the City of Potosi in the circuit court of Washington County. Later it was, on change of venue, transferred to the circuit court of Jefferson County. The petition in said suit was in three counts. Counts II and III have been disposed of and are not now at issue. In Count I plaintiff sued for damage to his land and loss of livestock caused by defendant city discharging sewage and effluent from its disposal plant into said creek thereby polluting the water thereof, causing offensive odors and rendering the water unfit for use. The cause proceeded to trial on the issues raised by Count I and defendant's answer thereto, and resulted in a verdict and judgment for plaintiff in the sum of $2,000. This judgment was reversed and the cause remanded for error in plaintiff's principal instruction. Lewis v. City of Potosi, Mo.App., 317 S. W.2d 623. Following the remand of the case the trial court on defendant's motion struck from the petition the allegations with reference to the loss of livestock, and the cause again proceeded to trial as an action for injury to plaintiff's land. There was a verdict and judgment for plaintiff in the sum of $2500. From this judgment defendant has appealed.

Count I of plaintiff's petition alleged that defendant was a municipal corporation; that plaintiff was the owner of certain real estate, described therein, through which flowed Mine Au Breton Creek; that prior to July 1952, the creek carried pure and wholesome water suitable and valuable for domestic use and for the use of livestock, and that it was a stream of great beauty; that on or about July 1, 1952, and continuously thereafter the city accumulated sewage and discharged it and contaminated effluent into the creek at a point upstream from plaintiff's land, thus polluting it and rendering it useless for domestic and livestock purposes; that said stream had been made ugly and unsightly; that raw sewage and contaminated effluent had been by said stream carried onto the plaintiff's land, making said land valueless, ugly and unsightly, and causing said stream and land to give off vile and noxious odors. It was then alleged that as a result thereof plaintiff's use and enjoyment of his land had been greatly interfered with, and the value thereof greatly reduced, all to plaintiff's damage in the sum of $7,500, for which sum plaintiff prayed judgment.

Defendant's answer admitted the corporate existence of defendant and denied generally all other allegations in Count I of the petition. There was also a plea of estoppel based upon an allegation that defendant had discharged sewage and the residue therefrom into said creek for more than twenty years with the full knowledge and acquiescence of plaintiff, and upon the further allegation that defendant had expended large sums of money in the construction of plants for the disposal of sewage without any protest from plaintiff. It was alleged that in 1933 defendant erected and put in operation a septic tank and purifier, and in 1952 and 1953 constructed additional septic tanks, Imhoff tanks and purifying works, and at all times since the erection of the original septic tanks and purifying works, the said plants have rendered satisfactory service and have proved efficient in purifying and deodorizing the sewage before the same was emptied into Mine Au Breton Creek. There was a denial that the plants created a nuisance. The answer also pleaded the five and ten year statutes of limitation.

It was admitted that defendant was a city of the fourth class, and operated its sewage system; and that plaintiff owned a farm of about 48 acres northwest of Potosi, on Mine Au Breton Creek.

In 1935 the city built its sewer system, which was extended in 1948 and enlarged in 1953. In the process a septic tank and Imhoff tank were built, a pipe line was extended 2,500 feet for the outfall, and two lagoons were built to receive the residue. The lagoons were adjacent to the creek about a quarter of a mile upstream from plaintiff's property.

Plaintiff's evidence at the trial was substantially the same as that in the first trial. It tended to establish that the creek flowing through plaintiff's land became polluted in the summer of 1951 to such an extent that it could not be used for watering livestock and, as a result of the pollution, the market value of respondent's farm was decreased substantially, and that such pollution continued and was present on the date of the trial, December 14, 1959. There was also evidence of losses by plaintiff of livestock resulting from the drinking of water from the creek.

Oscar E. Grewis, a consulting engineer, testified for the defendant. He stated he had, at the request of plaintiff's counsel, inspected the sewer plant in 1956. He gave it, as his opinion, that the plant was at that time operating satisfactorily. He found no reason for contamination of the stream into which the effluent went. On cross-examination it was brought out that he made no test of the water in the creek. He said he observed the effluent after it left the plant, and that it was of a satisfactory type in his opinion. He also stated that if he was informed that there were coliform organisms in the water below the plant as a result of seepage from the lagoon he would say the stream was contaminated to some extent. He had not seen the stream below the lagoon since 1956 and did not know of its condition as of the date of the trial, or what its condition was in 1951.

There was testimony offered by defendant from which a jury might infer that the stream in question was not contaminated. Also there was evidence concerning contemplated improvements, which, in the opinion of the witnesses, would eliminate any danger of contamination.

Clifford Summers, a sanitary engineer, with the State Division of Health, was called as a witness for defendant. He stated that he had seen detailed plans on file in his department for the improvement and extension of the Potosi sewage system. He gave it as his opinion that these improvements would adequately protect the stream against contamination from effluent reaching it from the lagoon. On cross-examination he gave this testimony:

"Q. You are not saying that the plant as it now exists at Potosi is an efficient plant? A. I haven't seen the plant in Potosi recently, I wouldn't know."

Walter Casey, a public Health Engineer with the Division of Health, testified for defendant that from July 1950 to July 1959 he had under his supervision and inspection the sewage plant located at Potosi. He stated he was familiar with the plans for the extension and improvement of defendant's sewer system. He testified as to how the plant was designed to operate when the improvements were completed, and stated, "When the new lagoon is completed it will all go through the new lagoon and the effluent from the new lagoon will be colorless and odorless, and as free of contamination as if it went through a very highly mechanized plant." He stated that the new lagoon was then under construction, but was unable to tell what stage of construction it had reached, since he was transferred from that area the previous July.

Howard Moore, an engineer, testified he was in charge of the new sewage treatment installation at Potosi. He stated that the existing installation was being rehabilitated, and a new wash stabilization basin, commonly referred to as a lagoon, was being constructed. This lagoon, when completed, would cover eleven acres, and would hold the effluent from the existing treatment plant and also some raw sewage. He stated

it was contemplated the project would be completed in March (1960), and that the new lagoon was 93% or 94% complete. He gave it as his opinion that when the new disposal plant was completed the treatment of sewage therein would be satisfactory to the extent that it would prevent contamination of the stream below the lagoon.

Dr. G. F. Cresswell, testified that he was Mayor of Potosi from 1942 to 1948, during which time he became familiar with the City's sewage treatment plant, and was familiar generally with the subject of the proper treatment of sewage in order to prevent contamination of the stream into which it eventually flows. The witness then gave the following testimony:

"Q. Doctor, it has been testified here that a plant now exists in Potosi to which additions and improvements are being constructed, that when completed, which is expected to be in March, 1960, the sewage treatment plant will consist of an imhoff tank, from which the raw sewage is taken to a trickling filter, which is connected about a distance of 3,300 feet to a pumping station and then into a 10 acre lagoon, where it is further treated by exposure to the elements, then the effluent from this lagoon is then released into a stream which flows close to the lagoon. Assuming those conditions to be true which I have given you, do you have an opinion as to whether or not such treatment of the sewage from the City of Potosi would be effective to prevent contamination of the stream into which the effluent from the lagoon goes? * * * A. Yes, I do.

"Q. What is that opinion? A. It will not contaminate any stream or anything else it comes in contact with."

Oscar Fager, Public Health Engineer for Jefferson County, testified that he could not see how after the new plant was completed, effluent from the new lagoon could contaminate the water in the stream below it.

Appellant contends that the court erred in overruling its motion for a directed verdict, for the reason that plaintiff's evidence failed to show a permanent injury to the land in question. We cannot agree to this proposition. Plaintiff's evidence tends to show that from December 1950 to the date of the trial below (December 14, 1959) the water in Mine Au Breton Creek, at plaintiff's farm, was contaminated to such an extent that it materially affected the use of the land and undoubtedly reduced the value thereof. Under the decisions, a case of permanent injury was made. Lewis v. City of Potosi, Mo.App., 317 S.W.2d 623; Stewart v. City of Springfield, 350 Mo. 234, 165 S.W.2d 626; Riggs v. City of Springfield, Mo.App., 344 Mo. 420, 126 S.W.2d 1144, 122 A.L.R. 1496.

Appellant also complains of Instruction No. 1 given by the Court at the request of plaintiff. It was a verdict-directing instruction which required a finding that defendant in the operation of its sewage system accumulated raw sewage into its disposal point, which was thereafter run by means of a pipe into a sewage pond located on Mine Au Breton Creek about three quarters of a mile upstream from plaintiff's farm; that prior to December 1950 said creek carried essentially wholesome water, suitable for watering livestock, as said creek ran through plaintiff's farm; that after December 1950 sewage effluent from the pond became and was offensive and polluted in excess of what it was prior to December 1950; that said effluent flowed and seeped into Mine Au Breton Creek and that as a result said creek, where it flowed through plaintiff's farm, became offensive, contaminated and polluted, rendering it useless for domestic and livestock purposes.

The only complaint lodged against this instruction is that it should have required a finding that the damage to plaintiff's land was permanent. There is no merit to such contention. Facts were required to be found, which under the decisions, show a permanent injury. Stewart v. City of Springfield, supra. If there were any facts

offered by defendant which would justify a finding otherwise, defendant was privileged to present them in a proper instruction.

Finally it is urged that the court erred in failing to give and read to the jury Instruction P–A, requested by it. The material portions of said instruction are as follows:

"\* \* \* if you believe and find from the evidence that the pollution of said stream \* \* \* is not permanent in the sense that it will exist at all reasonably *forseeable* times in the future, but that it is reasonably remediable, removable, and abatable to the extent that it will not continue to damage plaintiff's lands, and if you find that the said City of Potosi has under construction and in line for early completion a sewage treatment plant which when completed will reasonably so remedy, remove and abate the said pollution, if you so find, then the pollution of which the plaintiff complains is not permanent, and plaintiff cannot recover in this action \* \* \*."

 It seems to us, that before an instruction such as the one requested by defendant can be said to be proper, there should be in the record some evidence that at the time plaintiff's cause of action accrued it was scientifically possible for the offending municipality to have abated the nuisance, and that it *then* had in the process of construction means that would, when completed, abate same. The character of the use appropriated should be determined as of the date of the taking. In such a case a plaintiff's claim for permanent injury to his land might be defeated and his damages assessed on the basis of the existence merely of a temporary nuisance. Newman v. City of Eldorado Springs, Mo. App., 292 S.W.2d 314; Hillhouse v. City of Aurora, Mo.App., 316 S.W.2d 883. But here there was no such evidence. Plaintiff's cause of action accrued in December 1950. There was no showing that *at said time*

there were scientific ways to abate the alleged nuisance, and that immediate measures were *then* being taken to remedy the situation. In fact, defendant in its answer denied that any condition created was abatable and plead the statute of limitations as barring recovery. The court did not err in refusing the Instruction.

Finding no reversible error in the record, the judgment is affirmed.

RUDDY and WOLFE, JJ., concur.