B. F. FLANIGAN and Lela H. Flanigan, Husband and Wife, Earl C. Hatfield and Earleene Hatfield, Husband and Wife, Charles Hutchinson and Ruth V. Hutchinson, Husband and Wife, Dwight P. Hutchinson and Bessie M. Hutchinson, Husband and Wife, John M. Jackson and Vivian M. Jackson, Husband and Wife, Dan R. Rader and Betty Rader, Husband and Wife, Dale Sissel and Virgie Sissel, Husband and Wife, Emerson Taylor and Helen M. Taylor, Husband and Wife, Junior R. Yenicheck and Hazel J. Yenicheck, Husband and Wife, Respondents,

v.

The CITY OF SPRINGFIELD, Missouri, a Municipal Corporation, Appellant.

No. 49007.

Supreme Court of Missouri,

Division No. 2.

Sept. 10, 1962.

Motion to Transfer to Court En Banc Denied Oct. 8, 1962.

John B. Newberry, Springfield, for appellant.

Chinn, White & Dickey, Springfield, for respondents.

BOHLING, Commissioner.

■ This is an appeal by the City of Springfield, Missouri, defendant in nine actions, each instituted by a husband and wife, seeking damages for alleged nuisance created by the defendant in the operation of a sewage disposal plant. A change of venue was granted the plaintiffs in each case to Webster County from Greene County. The material allegations of each petition, in three counts, were substantially the same. The first count was for temporary nuisance; the second count, for permanent nuisance; and the third count was for injunctive relief. The nine cases were consolidated for trial by order of the trial court. The cases went to the jury on the theory of temporary nuisance, Counts II and III being voluntarily dismissed. The trial resulted in a judgment for $4,000 for the respective plaintiffs in each case, entered upon nine separate jury verdicts for said amount in the consolidated trial. The aggregate amount in dispute, exclusive of costs, on this appeal in the consolidated cases exceeds $15,000 and vests appellate jurisdiction in this court. Kitchen v. City of Clinton, 320 Mo. 569, 8 S.W.2d 602[1].

Plaintiffs claimed damages for foul and noxious odors conveyed by air currents across their respective lands from defendant's sewage plant known as the Southwest Disposal Plant.

In 1955 defendant City was authorized to issue bonds in excess of $9,000,000 for the purpose of rehabilitating its sewer system and constructing sewage disposal plants. Thereafter, it acquired 40 acres of land and constructed thereon at a cost of approximately $3,300,000 its Southwest Disposal Plant, an activated sludge treatment plant, also incorporating therein what is known as the Kraus process, for the purpose of disposing of certain sewage from defendant City. Defendant began partial treatment of sewage in December, 1959, and went into essentially full operation in January, 1960, at its said plant. Plaintiffs reside in a farming community in the vicinity of said plant. Prior to 1960 that area was free from all disagreeable and noxious odors. In March or April, 1960, within sixty to ninety days after said plant started full operations, disagreeable and noxious odors

became noticeable by plaintiffs. Plaintiffs established that these odors came from defendant's Southwest Disposal Plant and their intensity and noxiousness depended somewhat but not entirely upon the air currents around the plant. These odors were almost constant and got progressively worse "for quite some length of time." Their intensity and noxiousness started to subside in the Summer, were not so noticeable in the Fall of 1960, but were again noticeable about the first of the year and again about the time of trial—March 27, 1961.

Allen Mayfield, sanitary engineer in charge of the sanitary sewer system of defendant, testified that the Southwest Disposal Plant was designed to give complete treatment to sewage. The jury could find from his testimony that the operation of the plant produced methane, carbon dioxide, some hydrogen sulphide and other gases; that they were doing just what they could in the operation of the plant for several months; that is, "operate it by guess and by gosh because certain of the control features were not operating correctly"; that any sewage plant can get into "a temporary upset," but, barring that, under normal operation at the time of trial the plant should be "substantially odor-free" and one would "very definitely" have to get over on the plant property (the 40 acres) to detect the odor; and, as a witness for defendant, that they had an odor problem in the Spring and Summer of 1960.

A chemist, plaintiffs' witness, testified that decomposing sewage produces methane, carbon dioxide, hydrogen sulphide, ammonia and other gases; that hydrogen sulphide has a very distinctive odor, that of rotten eggs, is easily recognized, will cause boards painted with white lead paint to turn to a gray or darker color, in slight concentration is fatal, and the smell is nauseating. This witness identified the contents of a bottle, plaintiffs' Exhibit 1, upon smelling it, as hydrogen sulphide.

Several plaintiffs testified the odor from defendant's Southwest Disposal Plant was the same as or similar to the odor from plaintiffs' Exhibit 1, the odor of rotten eggs or of an outdoor toilet.

Plaintiffs' witness Dr. Thomas M. Mac-Donnell testified that hydrogen sulphide in concentration sufficient to discolor white lead paint on houses is sufficient to cause injury and discomfort to body tissues, irritate mucous membranes, and cause headaches, lassitude and nausea in warm weather.

The different plaintiffs testified as to the manner in which each was affected by the vaporous discharge from defendant's Southwest Disposal Plant. It turned white lead paint on some of the houses to a grayish or dark brown. This could be washed off. Although they kept their houses closed, they could not free themselves of the odor. Some would drive away from home to be rid of it. The odor was such that plaintiffs lost sleep and rest at night. It destroyed their appetites and made it unpleasant to eat their meals, made it embarrassing for them to have company, or to attend church. The odor was described as most nauseating, making plaintiffs sick at the stomach. It caused burning sensations in the mucous membranes of the eyes, nostrils and throat. There was testimony from one or two witnesses that they would wake at night with a scum on their lips, and from one that it could be tasted.

Consoer-Townsend & Associates of Chicago, Illinois, was the consulting engineering firm in charge of the Springfield sewage improvement project. That firm made a complete survey of the City of Springfield with respect to its sewage problem, designed the Southwest Disposal Plant, prepared the drawings and specifications therefor, and supervised its construction. Leo Rehm was the "general partner" of Consoer-Townsend in charge of this project, and James Moneyhan, another Consoer-Townsend associate, assisted Mr. Rehm. There was testimony from Mr. Rehm and other witnesses for the defendant that all

of the scientific appliances which were available and reasonably practicable to avoid a nuisance were incorporated in said plant. Mr. Rehm testified that Mr. Moneyhan participated in meetings before the public generally at the city council prior to the approval of the bond issue for the sewage improvement project in 1955, and "came right out" and stated that a sewage disposal plant of the type of defendant's Southwest Disposal Plant "that is well operated and well maintained shouldn't have an odor away from the immediate vicinity of the structure," meaning thereby away from the plant site; that is, the 40-acre tract on which the plant is located. There was other corroborating testimony as to Mr. Moneyhan's statements at public meetings before the city council. Mr. Rehm testified it was not unusual during the initial stages of operation of a sewage treatment plant to have odors of a temporary nature, but such odors should not have extended off the 40-acre plant site.

Appellant's first point is: "The Respondents did not offer any evidence to show that the defendant failed to use all the scientific appliances which were available and reasonably practicable to abate the nuisance"; and the court erred in not sustaining appellant's motion for a directed verdict at the close of all the evidence.

In Stewart v. City of Springfield (1942), 350 Mo. 234, 165 S.W.2d 626, 631, adopting the rulings in Riggs v. City of Springfield (1939), 344 Mo. 420, 126 S.W.2d 1144, 1153, 122 A.L.R. 1496, cases cited by defendant, we considered, as theretofore, a municipal sewer system, "because of the inherent nature of the operation" (Newman v. City of El Dorado Springs, infra), to be a permanent nuisance; that all damages, past and future (Stewart, supra, 165 S.W.2d loc. cit. 628), sustained by a riparian landowner had to be recovered in one action under the law of eminent domain (165 S.W.2d loc. cit. 630), the cause of action being subject to the statute of limitations (165 S.W.2d, loc. cit. 631). Court en banc further stated in the Stewart case, supra: "If a sewer sys-

tem were to be constructed today, with modern and efficient equipment available for purifying the sewage, a different rule might probably apply."

In affirming a recovery for the maintenance of a temporary and abatable nuisance arising from the operation of a municipal sewer system, the Springfield Court of Appeals in Newman v. City of El Dorado Springs (1956), Mo.App., 292 S.W.2d 314, 318, made the following observations, with respect to the effluent from a municipal sewer system into a water course being necessarily a permanent nuisance at the time of the Stewart, supra, and earlier cases, and holding: "There were then no means and methods for the elimination and disposal of obnoxious solids, liquids and gases. With the advance of science, however, such is no longer the case and the employment of modern mechanical and chemical processes makes it possible to eliminate the greater part of what was, in the days of our fathers, a natural, fixed and *necessary* consequence of the operation of a municipal sewer. Having regard to present day sewer construction, it should not be said (as an all-inclusive statement) that the inevitable, necessary and inherent result is a nuisance to the land below, except the lands in the vicinity thereof and such as will, in reasonable contemplation, be permanently affected by it." An application by the city to transfer the Newman case was denied by this court on September 10, 1956, in Case No. 45,854.

Later, that court in Hillhouse v. City of Aurora (1958), Mo.App., 316 S.W.2d 883, 887, approved and followed the Newman case, supra, and stated (loc. cit. 888[3]): "Where riparian landowners seek to treat as temporary and abatable the damage resulting from operation of a permanent municipal sewer system * * *, and where the temporary and abatable character of the nuisance and resulting damage is not conceded expressly or in necessary effect (contrast the Newman case, supra), we think that recovery by the landowners, as for damage resulting from a temporary and

abatable nuisance, should be permitted only upon evidence from which the triers of the facts fairly and reasonably may infer, and actually do find, that it would have been both *scientifically possible* and *reasonably practicable* for the offending municipality to have abated the nuisance when the land-owners' cause of action accrued."

The case at bar was tried under the law quoted from the Hillhouse case, supra; that is, whether at the time said Southwest Disposal Plant began operation it was scientifically possible and reasonably practicable for defendant to have so operated said plant that foul and noxious odors would not have escaped therefrom.

■ Any error in overruling defendant's motion for a directed verdict at the close of plaintiffs' evidence was waived when defendant offered evidence in its own behalf. Daniels v. Smith, Mo., 323 S.W.2d 705[1].

■ Whether plaintiff made a submissible case is determined in the appellate court upon a review of the facts established by the probative evidence in the whole case and the legitimate inferences arising therefrom in the light most favorable to the plaintiff, disregarding defendant's evidence conflicting therewith. Clark v. City of Springfield, Mo.App., 241 S.W.2d 100, 104 [3]; Giudicy v. Giudicy Marble, etc., Co., Mo., 329 S.W.2d 664, 665[1]; Daniels v. Smith, supra 705[2].

■ Shelley v. Ozark Pipe Line Corp., 327 Mo. 238, 37 S.W.2d 518, 519[1], 75 A.L.R. 316, states: " 'A temporary nuisance, as distinguished from a permanent one, may be said to be one which can be abated.' "

Defendant's witnesses established that the known scientific appliances which were available and reasonably practicable had been incorporated in defendant's Southwest Disposal Plant. They also testified it had been represented at public meetings before the city council prior to the construction of the plant, that when well operated and maintained the plant would not cause an odor problem away from the 40-acre plant site; that during the initial stages of operation it would not be unusual to have odors of a "temporary nature"; and that normally there should have been no odors off the 40-acre plant site.

The city sanitary engineer, Mr. Mayfield, testifying for defendant, stated an odor problem existed at the plant in the Spring and early Summer of 1960; and, on the stand for plaintiffs, testified that when operated in accordance with its design and barring a "temporary upset," the plant should be substantially odor-free and, "very definitely" one would have to be on the plant site to detect the odor; and also that they had been operating the plant for several months "by guess and by gosh because certain of the control features were not operating correctly."

" 'A jury may believe all of the testimony of any witness or none of it, or may accept it in part and reject it in part; just as the jury finds it to be true or false when considered in relation to the other testimony and the facts and circumstances in a case.' " Wilhoit v. Fite, Mo., 341 S.W.2d 806, 816 [15]. Williams v. Ricklemann, Mo., 292 S.W.2d 276, 280[4, 5].

■ In these circumstances we conclude it was a jury question whether it was scientifically possible and reasonably practicable for defendant to have so operated its plant that foul and noxious odors would not have escaped therefrom.

■ The jury, as stated, returned verdicts of $4,000 for each of the nine sets of plaintiffs; and defendant claims error in its brief on the ground that the different sets of plaintiffs testified to "differing damages and even though it is apparent from the record that the plaintiffs, due to geographical considerations, could not have been damaged in the same amounts and that the verdicts of the jury were based upon conjecture and speculation." The ground alleged in the last clause of the foregoing quotation was not presented to the trial

court in defendant's motion for new trial. See Civil Rules 79.03 and 83.13(a), V.A.M.R.; Section 512.160(1), RSMo 1959, V.A.M.S.; Mayor v. Mayor, Mo., 349 S.W.2d 60 [2, 5]; Wright v. Ickenroth, Mo.App., 215 S.W.2d 43[1].

We are referred to and find no case directly on the issue presented. Defendant cites McGuire v. Southwestern Greyhound Lines, Inc., Mo.App., 291 S.W.2d 621, 623, and Smith v. Rodick, Mo.App., 286 S.W.2d 73, 76[4–6]. In McGuire, a tort action, plaintiffs sued and recovered judgment against two defendants, S and B. B cross-claimed against S. Plaintiffs' recovery against B was predicated on the contributory negligence S interposed as a defense to B's cross-claim. Plaintiffs' judgment against both defendants was satisfied. In these circumstances on S's appeal from the judgment in favor of B, the verdict in favor of B was reversed because inconsistent with the judgment, which had become conclusive, in favor of plaintiffs against B. Plaintiff Smith sued for a liquidated sum of $1,550. The court refused a verdict for $200 and, later, the jury returned a verdict for $1,550, which was received and, upon appeal, held proper as plaintiff was entitled to $1,550 or nothing. Defendant's cases do not establish the alleged error.

■ Defendant's brief contains no reference whatsoever to any page of the transcript to sustain its contention. It is not the duty of an appellate court to search the record to ascertain if the error alleged by an appellant exists and is prejudicial. Civil Rule 83.05(a) (4), (d); Bays v. Jursch, Mo.App., 340 S.W.2d 430[2]; Jeck v. O'Meara, 343 Mo. 559, 122 S.W.2d 897, 905 [15].

There is nothing of record to sustain defendant's assertion in argument that the verdicts are quotient verdicts. Chrum v. St. Louis Pub. Serv. Co., Mo., 242 S.W.2d 54[1].

■ The damages to be awarded for a temporary nuisance of this nature have been considered to be peculiarly within the province of the jury, and are not to be interfered with unless grossly excessive or grossly inadequate. McCracken v. Swift & Co., 212 Mo. 558, 265 S.W. 91, 93. There is no contention (here or in the trial court) that the verdict for any set of plaintiffs is excessive. See Shohoney v. Quincy, O. & K. C. R. Co., 231 Mo. 131, 132 S.W. 1059 [1], 1062; Johnson v. Flex-O-Lite Mfg. Corp., Mo., 314 S.W.2d 75, 84[13]. If none of the verdicts is excessive, prejudicial error is not established by the verdicts being for identical amounts. Judgments are not to be reversed unless the appellate court believes error was committed against the appellant materially affecting the merits of the action. Civil Rule 83.13(b). The damages laid by the different sets of plaintiffs ranged from $5,000 to $50,000, the plaintiffs living farthest from the plant asking $22,000. Defendant's presentation does not establish prejudicial error; and we may not say as a matter of law that manifest injustice or miscarriage of justice has resulted to defendant from the verdicts being identical in amount.

Plaintiffs' chemist was handed a bottle, plaintiffs' Exhibit No. 1, and asked to smell and identify its contents. The witness, opening the bottle, identified its contents as hydrogen sulphide gas, having the well known and distinctive odor of rotten eggs. So far as disclosed by the record this bottle was opened only for the short time required by the witness to smell and identify its contents.

Later, at the noon recess, counsel for the defendant moved for a mistrial on the ground plaintiffs had brought into and turned loose in the courtroom the noxious odors from a bottle containing hydrogen sulphide only for the purpose of having the jury smell said offensive odors to the prejudice of defendant, and that defendant could not have a fair trial before said jury. Consult Hildreth v. Key, Mo.App., 341 S.W. 2d 601[25]; Hermann v. St. Louis Pub. Serv. Co., Mo.App., 345 S.W.2d 399[13].

Defendant's counsel was not a witness. His unsworn remarks to the court in his motion for a mistrial were not proof of the facts asserted. Hardwick v. Kansas City Gas Co., 352 Mo. 986, 180 S.W.2d 670, 673[3]; State ex rel. Horn v. Randall, Mo. App., 275 S.W.2d 758, 763[7]; Bullock v. B. R. Electric Supply Co., 227 Mo.App. 1010, 60 S.W.2d 733, 735[6].

There was testimony from the plaintiffs that the nauseating, burning and noxious odor at their premises from defendant's plant had the same smell as the odor from said Exhibit 1. With plaintiffs adducing evidence of substantial damages, we think it proper to show by scientific evidence the cause of that damage.

The granting of a mistrial for misconduct during the progress of a case rests largely within the discretion of trial courts. Smith v. Thompson, 346 Mo. 502, 142 S.W.2d 70, 73[5, 6]; State ex rel. and to Use of Donelon v. Deuser, 345 Mo. 628, 134 S.W.2d 132[5]; Brooks v. Mock, Mo., 330 S.W.2d 759, 769[15]. The trial court had an equal opportunity with defendant's counsel to observe the effect of said witness opening the bottle long enough to identify the hydrogen sulphide odor and was not impressed with statements by defendant's counsel in its motion for a mistrial. When the point was again presented in defendant's motion for new trial, the court again overruled it. The record does not establish an abuse of discretion on the part of the trial court in these rulings.

The judgment is affirmed.

STOCKARD, C., concurs.

BARRETT, C., not sitting.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All of the Judges concur.